[Cite as *State v. Rawson*, 2016-Ohio-1403.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                    :

    Plaintiff-Appellee,                       :

                                          No. 14AP-1023
v.                                               :        (M.C. No. 14ERB-71006)

Anthony D. Rawson,                               :        (REGULAR CALENDAR)

    Defendant-Appellant.                      :

---

D E C I S I O N

Rendered on March 31, 2016

---

**On brief:** *Richard C. Pfeiffer, Jr.*, City Attorney, *Lara N. Baker*, City Prosecutor, *Melanie R. Tobias,* and *Orly Ahroni*, for appellee. **Argued:** *Orly Ahroni.*

**On brief:** *Yeura R. Venters*, Public Defender, and *Timothy E. Pierce*, for appellant. **Argued:** *Timothy E. Pierce.*

---

APPEAL from the Franklin County Municipal Court

DORRIAN, P.J.

{¶ 1} Defendant-appellant, Anthony D. Rawson, appeals from a judgment of conviction and sentence entered by the Franklin County Municipal Court pursuant to jury verdicts finding him guilty of two violations of Ohio's statute prohibiting mistreatment of companion animals.

{¶ 2} The criminal complaint against appellant charged him with two violations of R.C. 959.131. The first charge alleged that he had knowingly and cruelly beaten a companion animal in his custody or care, a violation of R.C. 959.131(B). The second charge alleged that through omission or neglect he had caused unnecessary pain and suffering to a companion animal in his custody or care, and allowed such suffering to continue needlessly by failing to provide proper medical treatment for spinal injuries,

head trauma, and neurological symptoms, a violation of R.C. 959.131(C).   Appellant entered pleas of not guilty to both offenses.

{¶ 3}   Appellant is a former firefighter and EMT paramedic with extensive medical and emergency training.   During the period in question, however, appellant resided at a facility known as the Commons at Chantry, a supportive housing community serving the specialized needs of handicapped or formerly homeless individuals.   As part of the structured living environment at Chantry, appellant received supervision from a case manager provided by Maryhaven, a central Ohio provider of addiction and behavioral health services.   Appellant adopted a rescued beagle puppy from the Licking County Humane Society and named her Eunice.   He brought her to live in his apartment at Chantry where the dog eventually suffered injuries that required euthanization, leading to the charges against appellant.

{¶ 4}   At trial, the prosecution presented the testimony of Benjamin Revilla, a fellow resident at Chantry.   Revilla testified that on March 27, 2014, appellant came to his door and asked if Revilla could check on Eunice.   Revilla went to appellant's apartment and saw Eunice underneath appellant's kitchen table; her head was tilted unnaturally and her tongue was hanging out.   Revilla noticed Eunice did not respond to touch, her legs were rigid, and eyes bulged out.   Appellant denied injuring the dog when asked, and Revilla did not observe anything out of order in the apartment.   Revilla advised appellant to contact a veterinarian and find someone who could transport Eunice and appellant. Later that evening, appellant informed Revilla that he had contacted a veterinarian but could not afford the advanced payment demanded.   The next morning, Revilla informed his own counselor about the dog's condition and suggested that someone should seek help from the humane society or another source.   Revilla testified that appellant stated he would occasionally trip over Eunice while walking around the apartment or outside.

{¶ 5}   Sean Penny testified as appellant's Maryhaven case manager.   Penny testified that he had been appellant's case manager for three years and assisted him and other clients with day-to-day activities.   Upon learning from Revilla's case manager that there was something wrong with appellant's dog, Penny performed a housing unit inspection and found appellant lying on his couch next to Eunice.   The dog's eyes were glazed, her tongue was hanging out of her mouth, and her ears were not moving.

Appellant then informed Penny that Eunice had suffered a seizure and that he had administered CPR to her twice. Penny shortly thereafter contacted the Capital Area Humane Society for assistance. Penny was present when a humane society agent came to the apartment. Appellant refused to allow them in but did allow them to check over Eunice while standing in the hallway. Appellant then signed Eunice over to the humane society.

{¶ 6} Penny further testified that as a case manager he can provide bus passes and a form of transportation insurance which can furnish taxi service in cases of urgent need. Penny also testified that from time to time he will personally provide emergency transportation for residents. His clients have an emergency after-hours contact protocol when they need immediate assistance.

{¶ 7} Humane Society Investigating Agent Anthony Chamberlain testified for the prosecution that he was dispatched to Chantry following a phone call from appellant's case manager, Penny. When Chamberlain knocked on appellant's door, Penny was still present and allowed Chamberlain to enter. Appellant then informed Chamberlain that he wished Chamberlain to leave his apartment but followed Chamberlain into the hallway and allowed Chamberlain to examine Eunice. Chamberlain immediately noticed that Eunice had a neck or back injury, demonstrated by her loose and uncontrolled head movement while being carried. Appellant told Chamberlain that he was unable to remember if he had injured the dog. Appellant informed Chamberlain that Eunice was constantly under foot and he frequently stepped on her. Appellant also stated that he suspected he had injured Eunice while administering CPR to her after she became unresponsive. Upon Chamberlain's request, appellant surrendered Eunice to the humane society and executed a form giving the society permission to euthanize Eunice if her health problems were untreatable. Chamberlain's personal assessment at the scene was that the dog's injuries did not result from application of CPR but from blunt force trauma.

{¶ 8} Chamberlain and another humane society investigator returned the following day to obtain additional information from appellant. As with a portion of the previous day's visit, part of this interview was recorded by Chamberlain using his cell phone. Penny was also present at this interview. Appellant expressed concern about Eunice and demonstrated how he had performed CPR on her. Appellant appeared visibly

upset and concerned about Eunice.  Chamberlain again opined that the dog's injuries were consistent with appellant's comments that he had possibly stepped on her.

{¶ 9}   Dr. Emily Walz, a veterinarian who examined Eunice at the humane society, testified that Eunice presented with signs of neurological impairment and was unresponsive.  Dr. Walz immediately suspected a spinal cord injury.  Dr. Walz observed that Eunice's eyes had broken blood vessels, were bulging, and one appeared to have a corneal ulcer.  During her testimony, Dr. Walz identified several photographs and used these to illustrate her conclusion that Eunice's spinal cord had been compressed and damaged between vertebra C1 and C2, which was consistent with the dog's special posture and inability to rise or respond to stimulus.  Dr. Walz opined that the injuries observed were consistent with severe pain from the time of injury forward.  Based on Eunice's condition, including obvious severe pain and poor prognosis, Dr. Walz independently concluded that the dog would be put down without need to refer to the owner's authorization.

{¶ 10} The defense presented the testimony of Harry Roush, another Chantry resident.  Roush described appellant as a caring dog owner who wept when he heard that Eunice had been euthanized.  Roush testified that he could not recall the exact date of the events concerning Eunice but did remember the dog being unable to walk.  Roush stated that he and appellant contacted veterinarians, who all wanted advanced payment which appellant could not afford.  He observed Eunice throwing up after her injury and appellant administering CPR.

{¶ 11} Bill Braskett, another Chantry resident, testified that his apartment was across the hall from appellant.  On most days, Braskett and appellant would have dinner together.   Braskett testified that appellant brought Eunice to his apartment, and she appeared obviously sick and lethargic and appellant carried her the entire time.  They attempted to feed Eunice when she seemed to be feeling better, whereupon she vomited.  Braskett also testified that appellant attempted to contact veterinarians, all of whom wanted a prohibitive fee in advance.  Appellant appeared to care for and protect Eunice as best he could by carrying her and holding her.

{¶ 12} Appellant testified in his own defense.  He stated that he had graduated from high school with good grades and served between five and seven years as a

paramedic and firefighter.  He had resided in the Chantry residence approximately three years before the events in question.  On March 27, 2014, he came home to his apartment and noticed that Eunice was acting strangely, but she was still able to walk.  Appellant tried to get Eunice to eat, and when she tried her legs went limp.  Appellant summoned Revilla, who opined that appellant needed to get Eunice some veterinary attention quickly.  Later, appellant took the dog to Braskett's apartment, where Eunice had her first seizure.  He administered CPR when she seized and vomited several times.  He then attempted to contact approximately 20 veterinarians, but only 1 answered because of the late hour.  That veterinarian wanted more money than appellant could provide, even after contacting relatives and his mother's church seeking financial assistance.  Appellant testified that he believed that at this point he had exhausted all his options for securing care for Eunice.  When Chamberlain came to the apartment the next day, appellant was reluctant to allow him to enter.  Appellant eventually relented and allowed Chamberlain to take the dog because Chamberlain threatened to get a warrant to do so without consent.  Appellant testified consistently that he had never harmed the dog and he had done everything within his means to assist Eunice with her injuries.

{¶ 13} At the close of evidence, appellant's counsel objected to the jury instructions on the R.C. 959.131(B) charge because this included references to every defined alternative means of committing the offense, including various means that were not charged in the complaint or supported by any evidence. Counsel also objected to amendment of the second charge from a violation of R.C. 959.131(C)(1), alleging an act of commission, to R.C. 959.131(C)(2), alleging an act of omission.  Counsel for appellant also moved to dismiss both charges on the basis that R.C. 959.131 was unconstitutional and void for vagueness in various ways.  The trial court overruled the objections to the jury instructions and motion to dismiss.

{¶ 14} After the jury returned guilty verdicts on both charges, the court entered judgment accordingly. Appellant brings the following four assignments of error on appeal:

> [I.] Appellant's conviction and sentence for violating R.C. 959.131(B) is void because his right to a unanimous jury verdict under Crim.R. 31(A) was violated by the court's failure to properly instruct the jury.

[II.] The trial court erred by not dismissing the charges alleging violations of R.C. 959.131(B) and 959.131(C)(2) since the requirement found in both that there exist "a reasonable remedy or relief" is unconstitutionally vague which voids the application of these statutes through the operation of the Due Process Clauses of the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Sections 1 and 16 of the Ohio Constitution. Appellant's convictions must therefore be vacated.

[III.] The jury's verdict convicting Appellant of the offenses below was not supported by the manifest weight of the evidence.

[IV.] Because Appellant's convictions were not supported by legally sufficient evidence they were obtained in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments of the United States Constitution, Article I, Sections 1 and 16 of the Ohio Constitution, and Crim.R. 29.

{¶ 15} Appellant's first assignment of error addresses the trial court's jury instruction regarding R.C. 959.131(B). The trial court's instruction as given tracks the statutory language of R.C. 959.131(B), which provides a series of independent alternative means by which a defendant may commit the defined crime:

No person shall knowingly torture, torment, needlessly mutilate or maim, cruelly beat, poison, needlessly kill, or commit an act of cruelty against a companion animal.

{¶ 16} The jurors were instructed that they could find appellant guilty of this charge if they found beyond a reasonable doubt that appellant "did knowingly torture, torment, needlessly mutilate or maim, cruelly beat, poison, needlessly kill, or commit an act of cruelty against a companion animal." (Tr. Vol. III, 419-20.) The court acknowledged that the alternate means, aside from "cruelly beat," were not relevant to the crime as charged and the evidence presented, but nonetheless decided that the complete instruction on all alternate means contained in the statute was nonetheless appropriate.

{¶ 17} Appellant asserts that the jury instruction on the R.C. 959.131(B) charge was erroneous because it deprived him of his right to the unanimous jury verdict required by Crim.R. 31(A); the jurors, although in general agreement that he was guilty, could conceivably have failed to agree on the proven means by which he committed the offense.

Appellant asserts that this violates the rule in *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, ¶ 49, governing jury unanimity in alternative means cases. *Gardner* holds that while Crim.R. 31(A) does not require jury unanimity as to the specific alternative means supporting conviction, there must be sufficient evidence to support each charged alternative means *upon which the jury was instructed*, so that "a rational trier of fact could have found each means of committing the crime proved beyond a reasonable doubt." *Id.* at ¶ 49.

{¶ 18} Plaintiff-appellee, State of Ohio, responds that a looser rule stated in *Griffin v. United States*, 502 U.S. 46 (1991), requires only that one of the instructed alternative grounds be supported by sufficient evidence, with the assumption that jurors will disregard the alternative grounds that are not so supported. In the alternative, the state argues that if *Gardner* compels a finding that the trial court's instructions in this case were erroneous, that error was harmless.

{¶ 19} When reviewing a trial court's jury instructions, the proper standard of review for an appellate court is whether the trial court's refusal to give a requested jury instruction constituted an abuse of discretion under the facts and circumstances of the case. *State v. Stewart*, 10th Dist. No. 10AP-526, 2011-Ohio-466, ¶ 9, citing *State v. Wolons*, 44 Ohio St.3d 64, 68 (1989). The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *State v. Clark*, 71 Ohio St.3d 466, 470 (1994). "Jury instructions that effectively relieve the state of its burden of persuasion violate a defendant's due process rights," and subvert the presumption of innocence and the right to have a jury determine the facts of a case. *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, ¶ 97, citing *Sandstrom v. Montana*, 442 U.S. 510 (1979); *Carella v. California*, 491 U.S. 263, 265 (1989).

{¶ 20} In *Gardner*, the Supreme Court of Ohio "adopted the rule that each possibility in an alternative means case must be supported by sufficient evidence." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, ¶ 290, citing *Gardner* at ¶ 49. In *Adams*, 2015-Ohio-3954, the Supreme Court of Ohio expressly refused to abandon that rule in favor of the rule adopted by the United States Supreme Court in *Griffin* governing federal prosecutions. *Adams*, 2015-Ohio-3954, at ¶ 291, citing *Griffin* at 56-57. The Supreme

Court noted that "*Griffin* was premised on a dubious assumption of juror infallibility: the jury will always disregard an unproven theory and convict only on the proven theory." *Id.*, citing *Griffin* at 59.

{¶ 21} As *Adams*, 2015-Ohio-3954, makes clear, the Supreme Court still strongly adheres to the rule stated in *Gardner*. The Supreme Court's ruling in *Gardner* is based on Crim.R. 31(A), rather than constitutional due process considerations: "[T]his opinion will proceed on the understanding that unanimity in a juror verdict in state courts is not protected by the federal Constitution." *Gardner* at ¶ 35. Reflecting this, *Adams* makes clear that the Supreme Court does not consider its decision in *Gardner* to conflict with the United States Supreme Court's decision in *Griffin* governing federal prosecutions. *Adams*, 2015-Ohio-3954, at ¶ 295. As a result, the cases cited by the state here are largely inapposite either because they precede *Gardner*, e.g., *State v. Sims*, 8th Dist. No. 84090, 2005-Ohio-1978, or issue from states that apply *Griffin* to state court prosecutions, e.g., *State v. Chapman*, 229 Conn. 529, 540-47 (1994).

{¶ 22} In final opposition to appellant's first assignment of error, the state argues that even if *Gardner* applies strictly on the facts of this case, and the instructions given by the trial court to the jury were thus in error, that error was harmless because no prejudice to appellant could be discerned: it was clear which alternative means under the statute the state emphasized and relied on for conviction, and the jury heard no evidence to support the improperly-instructed alternative means of poisoning or intentionally killing the dog. Without disputing this description of the evidence, we nonetheless find that the erroneous jury instructions in the present case cannot be excused on grounds of harmless error.

{¶ 23} Crim.R. 52(A) defines the doctrine of harmless error in criminal cases and provides that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Under the harmless error standard of review, "the government bears the burden of demonstrating that the error did not affect the substantial rights of the defendant." *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, ¶ 15, citing *United States v. Olano*, 507 U.S. 725, 741 (1993).

{¶ 24} *Gardner* itself is predicated on the fact that there may be so little evidence adduced on alternative means that there was no risk of mistake on the part of the jury, yet the jury instructions will still be in error for including the unsubstantiated alternative

means. It follows that the rationale of *Gardner* implies, or even mandates, a presumption of prejudice that leaves little room for the application of a harmless error analysis, in sharp contrast with *Griffin*, which reverses the presumption.  To apply a harmless error analysis to *Gardner* is to largely transform that case into *Griffin*, a step that directly contravenes the Supreme Court's express rejection of *Griffin* in *Gardner* and *Adams*, 2015-Ohio-3954.  Because *Gardner* expressly states that the defendant has a substantial right to a unanimous jury verdict under Crim.R. 31(A), and instructing the jury on unsupported alternative means, no matter how implausible, violates that right, we cannot find harmless error in this case while complying with *Gardner*.

{¶ 25} We accordingly sustain appellant's first assignment of error because the trial court's jury instructions constituted error under *Gardner*, and, as a result, we reverse appellant's conviction on the first charge alleging a violation of R.C. 959.131(B). This reversal does not preclude retrial on the same charge because it does not represent a reversal based on the sufficiency of the evidence; the state presented sufficient evidence to support conviction on one of the instructed alternative means of committing the offense, and the error lies only in the instructions that followed.

{¶ 26} Appellant's second assignment of error asserts that R.C. 959.131(B) and (C) are unconstitutionally vague because these sections make it an offense if a pet owner fails to seek "reasonable remedy or relief" for an injured animal, and that phrase is too broad and imprecise.

{¶ 27} Enactments of the General Assembly are presumed constitutional and must be clearly incompatible with applicable constitutional provisions before a court may declare them unconstitutional.  *State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142 (1955), paragraph one of the syllabus; *State v. Beavers*, 10th Dist. No. 11AP-1064, 2012-Ohio-3654, ¶ 9.  " 'Under the vagueness doctrine, statutes that do not fairly inform a person of what is prohibited will be found unconstitutional as violative of due process.' " *State v. Carrick*, 131 Ohio St.3d 340, 2012-Ohio-608, ¶ 14, quoting *State v. Reeder*, 18 Ohio St.3d 25, 26 (1985).  The test does not require impossible standards of specificity but considers whether the language conveys sufficiently definite warning as to the proscribed conduct.  *Id.*  A criminal statute is not void solely because it might have been worded more precisely.  *Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, ¶ 86.

{¶ 28} Appellant here makes both a facial vagueness challenge and an as applied challenge to the statutes. An "as applied" challenge asserts that a statute is unconstitutional as applied to the challenger's particular conduct. *Columbus v. Meyer*, 152 Ohio App.3d 46, 2003-Ohio-1270, ¶ 31 (10th Dist.). In contrast, a facial vagueness challenge asserts that the law is unconstitutional as applied to the hypothetical conduct of any person, without reference to the defendant's specific conduct and circumstances. *Id*. "Facial-vagueness challenges are generally allowed only where the statute is vague in all of its applications." *State v. Williams*, 88 Ohio St.3d 513, 532 (2000). A defendant must therefore " 'prove, beyond a reasonable doubt, that the statute was so unclear that he could not reasonably understand that it prohibited the acts in which he engaged.' " *Carrick* at ¶ 15, quoting *State v. Anderson*, 57 Ohio St.3d 168, 171 (1991). The two types of challenge may be discussed together on these facts.

{¶ 29} R.C. 959.131(B) provides that no person shall knowingly "torture * * * or commit an act of cruelty against a companion animal." Cruelty, torment, and torture include acts of commission or omission by which unnecessary or unjustifiable pain or suffering is "caused, permitted, or allowed to continue, when there is a reasonable remedy or relief." R.C. 1717.01(B), incorporated by reference in R.C. 959.131(B).

{¶ 30} R.C. 959.131(C)(2) also uses the term "reasonable remedy or relief" when defining an act of negligence or omission of care. Appellant argues that in both sections, the term "reasonable remedy or relief" is unconstitutionally vague. In his case, appellant argues his lack of means severely restricted the possibility of reasonable remedy or relief, and the law would necessarily require a different standard to assess his conduct compared to a pet owner who could afford an after-hours consultation with a veterinarian or a visit to an animal hospital emergency room.

{¶ 31} We find to the contrary that the objective standard is sufficiently well defined in both subsections to afford a person of ordinary intelligence fair notice of the proscribed conduct. The fact that different circumstances might affect the factual reasonableness and availability of a remedy or relief does not make the statute unconstitutionally vague on its face, but merely allows the finder of fact to make allowances for reasonableness of conduct in light of the defendant's personal circumstances. This is because invocation of the "reasonable person" standard in criminal

statutes and ordinances does not, of itself, render the statute excessively vague. It is sufficiently clear to define prohibited conduct. *Columbus v. Kendall*, 154 Ohio App.3d 639, 2003-Ohio-5207, ¶ 13 (10th Dist.); *see also Kovacs v. Cooper*, 336 U.S. 77 (1949); *Village of Kelleys Island v. Joyce*, 146 Ohio App.3d 92 (6th Dist.2001); *Village of Edison v. Jenkins*, 5th Dist. No. CA893 (June 7, 2000). As a result, we find the statute is not unconstitutionally vague on its face, nor, given our review of the facts, was it unconstitutionally applied to appellant's circumstances. The prohibited conduct is sufficiently clear both on the face of the statute and in relation to appellant's personal circumstances, and appellant's second assignment of error is overruled.

{¶ 32} Appellant's third and fourth assignments of error assert together that appellant's conviction is against the manifest weight and sufficiency of the evidence. The legal concepts of sufficiency of the evidence and weight of the evidence involve different determinations. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

{¶ 33} As to sufficiency of the evidence, " 'sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *Id.*, citing *Black's Law Dictionary* 1433 (6 Ed.1990). A determination as to whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.* The relevant inquiry on review of the sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis sic.) *Jackson v. Virginia*, 443 U.S. 307 (1979), paragraph 1(b) of the syllabus; *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. As a result, when we review the sufficiency of the evidence, we do not on appeal reweigh the credibility of the witnesses. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79. A reversal based on insufficient evidence has the same effect as a not guilty verdict because such a determination "means that no rational factfinder could have voted to convict the defendant." *Tibbs v. Florida*, 457 U.S. 31, 41 (1982).

{¶ 34} As opposed to the concept of sufficiency of the evidence, the court in *Thompkins* noted that "[w]eight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than

the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief.*'" (Emphasis sic.) *Thompkins* at 387, quoting *Black's* at 1594. As the finder of fact, the jury is in the best position to weigh the credibility of testimony by assessing the demeanor of the witness and the manner in which he testifies, his connection or relationship with the parties, and his interest, if any, in the outcome. The jury can accept all, a part, or none of the testimony offered by a witness, whether it is expert opinion or eyewitness fact, whether it is merely evidential or tends to prove the ultimate fact. *State v. McGowan*, 10th Dist. No. 08AP-55, 2008-Ohio-5894, ¶ 13, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).

{¶ 35} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. *Thompkins* at 387. An appellate court should reverse a conviction as against the manifest weight of the evidence in only the most "exceptional case in which the evidence weighs heavily against conviction," instances in which the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 36} Appellant's challenge to the manifest weight of the evidence supporting his conviction under R.C. 959.131(B) is rendered moot by the fact that we reverse that conviction based on the trial court's erroneous jury instructions. We nonetheless address appellant's contention that there was insufficient evidence to support a conviction on that charge because a reversal on the sufficiency of the evidence would preclude retrial.

{¶ 37} A brief review of the evidence presented at trial establishes that there was sufficient evidence to support conviction for a violation of R.C. 959.131(B). Appellant did not deny that Eunice was with him throughout the period in which she went from a healthy, active puppy to a sick, nearly comatose dog, suffering seizures, unable to eat, vomiting, and giving sign of an obviously severe neck injury. Appellant admitted in his

statement to witnesses that he frequently found the dog underfoot. The jury was free to disbelieve appellant's evidence that he thought Eunice had eaten some glue, paint, or other substance causing her to suffer, and the jury was also free to consider the motives behind these unsupported statements.  The jury manifestly also could refuse to give credence to appellant's claim that, despite his training as a paramedic and firefighter, he was completely unaware of Eunice's severe neck injury, which was obvious to not only veterinarian and humane society investigators, but to appellant's neighbors.  There was also sufficient evidence for the jury to conclude that, based on the dog's condition, appellant should have heeded his neighbor's advice and immediately sought veterinary assistance for Eunice.  All of this evidence, and the permissible inferences to be drawn therefrom, constitute sufficient evidence to sustain appellant's conviction for a violation of R.C. 959.131(B).

{¶ 38} The same evidence also supports appellant's conviction for a violation of R.C. 959.131(C)(2), based on his unreasonable delay in seeking medical attention for Eunice long after it became apparent to several observers that she was in pain and gravely injured.  The jury heard evidence that appellant had difficulty raising the funds to advance money for an after-hours visit to a veterinarian.  The jury also had before it evidence that appellant had access to other resources and could have consulted the humane society before its investigators were called in response to appellant's neglect of his dog.  The language of the statute called for appellant to take reasonable means to alleviate the dog's suffering, and the jury could find on these facts that appellant had reasonable opportunities to do so but did not act on them.  His conviction on that charge is supported by sufficient evidence and not against the manifest weight of the evidence.

{¶ 39} Appellant's third assignment of error is rendered moot in part and overruled in part, and his fourth assignment of error is overruled.

{¶ 40} In summary, the trial court committed reversible error in disregarding *Gardner* and instructing the jury on alternative means for which there was no evidentiary support. The verdicts rendered by the jury were not otherwise against the manifest weight of the evidence and were supported by sufficient evidence. The criminal statutes under which appellant was charged and convicted are not unconstitutionally vague.  Based on the foregoing, appellant's first assignment of error is sustained, appellant's second and

fourth assignments of error are overruled, and his third assignment of error is overruled in part and rendered moot in part. The judgment of the Franklin County Municipal Court is reversed in part, and the matter is remanded for further proceedings.

*Judgment reversed in part and*
*cause remanded.*

KLATT, J., concurs.
BRUNNER, J., concurring.

BRUNNER, J., concurring.

{¶ 41} I concur with the decision of the majority but wish to separately address the void for vagueness argument offered by Rawson and expand on the majority's analysis on the question of whether the statute is vague as applied to Rawson.

{¶ 42} "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). " 'No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes.' " *Chicago v. Morales*, 527 U.S. 41, 58 (1999), quoting *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939). In a facial challenge, "assuming the enactment [being challenged] implicates no constitutionally protected conduct, [a court] should uphold the challenge only if the enactment is impermissibly vague in all of its applications. A [person] who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 494-95 (1982). "An 'as applied' challenge asserts that a statute is unconstitutional as applied to the challenger's particular conduct." *Corsi v. Ohio Elections Comm.*, 10th Dist. No. 11AP-1034, 2012-Ohio-4831, ¶ 11, citing *Columbus v. Meyer*, 152 Ohio App.3d 46, 2003-Ohio-1270, ¶ 31 (10th Dist.).

{¶ 43} There is no doubt that R.C. 959.131 is a broad statute, written to encompass all manner of mistreatment of animals. To be guilty of violating R.C. 959.131(C), one must "negligently * * * [c]ommit any act [or] * * * [o]mit any act of care by which unnecessary or unjustifiable pain or suffering is caused, permitted, or allowed to continue, when there is a reasonable remedy or relief, against the companion animal." However the

definition of negligence clarifies why this case does not result in R.C. 959.131(C) being vague as applied to Rawson:

> A person acts negligently when, *because of a substantial lapse from due care*, the person fails to perceive or avoid a risk that the person's conduct may cause a certain result or may be of a certain nature. A person is negligent with respect to circumstances when, *because of a substantial lapse from due care*, the person fails to perceive or avoid a risk that such circumstances may exist.

(Emphasis added.) R.C. 2901.22(D).

{¶ 44} Here, the dog's spinal cord was compressed between C1 and C2 vertebrae, the eyes were bulging and glazed, the tongue was extruded, and the limbs were rigid and non-responsive. The dog's condition was not a case where an otherwise conscientious pet owner adopted a wait-and-see approach in the face of somewhat ambiguous symptoms and was thereafter prosecuted. Rather, this was a case where an animal was obviously in extremis, and the owner either caused the condition in the first place or failed to seek help from resources that were available to him. For example, Rawson's case manager testified that his clients are provided with emergency after-hours contact protocols to use when they need immediate assistance. Moreover, when the animal rescue officials arrived, Rawson would not allow them to enter the apartment; although, he did allow them to examine the dog in the hallway. This situation bespeaks a substantial lapse of due care by Rawson. The statute as applied to Rawson is not vague. R.C. 2901.22(D); *Kolender* at 357.

{¶ 45} I concur in the result reached by the majority with the specific clarification that the statute is not vague as applied in this case for the reasons expressed in this separate opinion.

_____