[Cite as *State v. Crumpton*, 2024-Ohio-5064.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

State of Ohio,                  :        Case No. 23CA4024

    Plaintiff-Appellee,      :        <u>DECISION AND</u>
                                         <u>JUDGMENT ENTRY</u>
v.                              :

Isreal L. Crumpton,            :

    Defendant-Appellant.     :        **RELEASED 10/18/2024**

_____

<u>APPEARANCES</u>:

Mallorie Thomas, Assistant State Public Defender, Office of the Ohio Public Defender, Columbus, Ohio, for appellant.

Shane A. Tieman, Prosecuting Attorney, and Jay Willis, Assistant Prosecuting Attorney, Portsmouth, Ohio, for appellee.

_____

Hess, J.

    **{¶1}**   Isreal L. Crumpton appeals from a judgment of the Scioto County Court of Common Pleas convicting him, following a jury trial, of drug-related offenses and possessing criminal tools. He presents three assignments of error asserting: (1) the trial court committed plain error when it accepted a non-unanimous written jury verdict on Count Two; (2) the court erred in denying his motion to dismiss; and (3) the State failed to introduce sufficient evidence to support his conviction for drugs recovered by a rental vehicle company. For the reasons which follow, we sustain the first assignment of error and overrule the second and third assignments of error. We reverse the conviction on Count Two and remand for resentencing on Count Eight, possession of heroin, with major

drug offender specification, which the trial court previously merged with Count Two for sentencing purposes.  We affirm the trial court's judgment in all other respects.

## I.  FACTS AND PROCEDURAL HISTORY

### A.  Pre-Trial Proceedings

{¶2}    In August 2021, Crumpton was indicted on the following counts:  (1) Count One, trafficking in a fentanyl-related compound, a first-degree felony; (2) Count Two, trafficking in heroin, a first-degree felony; (3) Count Three, trafficking in cocaine, a first-degree felony; (4) Count Four, aggravated trafficking in drugs (methamphetamine), a second-degree felony; (5) Count Five, aggravated trafficking in drugs (oxycodone), a fourth-degree felony; (6) Count Six, aggravated trafficking in drugs (amphetamine), a fourth-degree felony; (7) Count Seven, possession of a fentanyl-related compound, a first-degree felony; (8) Count Eight, possession of heroin, a first-degree felony; (9) Count Nine, possession of cocaine, a first-degree felony; (10) Count Ten, aggravated possession of drugs (methamphetamine), a second-degree felony; (11) Count Eleven, aggravated possession of drugs (oxycodone), a fifth-degree felony; (12) Count Twelve, aggravated possession of drugs (amphetamine), a fifth-degree felony; (13) Count Thirteen, possession of marihuana, a minor misdemeanor; and (14) Count Fourteen, possessing criminal tools, a fifth-degree felony.  Counts One, Two, Three, Seven, Eight, and Nine had major drug offender specifications.  Crumpton was arraigned on October 15, 2021, and pleaded not guilty.

{¶3}    On February 18, 2022, Crumpton filed motions to suppress identification evidence, statements, and other evidence. The trial court conducted a hearing on the

motions, at which Crumpton withdrew the motion to suppress identification evidence. The trial court denied the remaining motions to suppress.

**{¶4}** On July 26, 2022, Crumpton filed a motion to dismiss and/or exclude evidence premised on selective enforcement of the law based on race by the trooper who stopped the vehicle in which Crumpton was a passenger. After a hearing, the trial court denied the motion. The trial court explained:

> Crim.R. 12(D) provides: All pretrial motions except as provided in Rule 7(E) and Rule 16(F) shall be made within thirty-five days after arraignment or seven days before trial, whichever is earlier. The court in the interest of justice may extend the time for making pretrial motions.
>
> The Defendant in this matter never asked for leave of court to file the instant motion. The Defendant has also failed to file his motion as required within the timeliness of the Rules of Criminal Procedure. This Court at an earlier hearing decided to allow evidence to be presented on the equal protection issue raised, but reserved ruling on any procedural issues. This Court finds that Defendant has failed to seek leave, or to provide argument, on why the . . . motion to dismiss was not filed in a timely manner. This Court finds that Defendant's motion is not well taken and is denied, due to this failure.

The court also found that "the relief requested of suppression of evidence and dismissal are unavailable a [sic] remedy as to the facts alleged in this matter." In addition, the court found Crumpton had not shown that race played any part in the actions of the trooper on the day in question or in any other case, that the trooper stopped or searched the vehicle occupied by Crumpton with a discriminatory purpose, or that the Ohio State Highway Patrol adopted a policy or employed a practice with discriminatory purpose. Therefore, Crumpton's equal protection rights had not been violated.

## B. Trial and Sentencing

**{¶5}** The matter proceeded to a jury trial. The State moved to dismiss Counts Six and Twelve (the amphetamine-related counts) and to amend Counts Three and Nine

(the cocaine-related counts) from first-degree felonies to fifth-degree felonies. The trial court granted the motions.

**{¶6}**     Trooper Nick Lewis of the Ohio State Highway Patrol testified that on August 2, 2021, around 8:41 p.m., a vehicle caught his attention because it appeared to be a rental vehicle (which are used in a lot of drug trafficking organizations), had no headlights on, and was following another vehicle too closely.  He followed the vehicle and saw it cross the white dashed center lane line and the white line on the right side of the road. He initiated a traffic stop and learned that the vehicle was registered to EAN Holdings, i.e., Enterprise, the driver was Brianna Love, the passenger was Crumpton, they were Michigan residents, Love had a valid driver's license, and Crumpton had a suspended license.

**{¶7}**     During the stop, Trooper Lewis smelled the odor of marihuana coming from the vehicle, had Love and Crumpton sit in his cruiser, and searched the vehicle.  Trooper Lewis found a marihuana seed on the driver's seat and small pieces of marihuana under the driver's seat and on the floor by the front passenger seat where Crumpton had been sitting. Trooper Lewis also found a blue North Face bag and a plastic Family Dollar bag in the trunk which contained suspected contraband. Trooper Lewis arrested Crumpton and Love and had the vehicle towed.  The State presented evidence that after Enterprise retrieved the vehicle from the towing company, Enterprise found additional suspected contraband in a black bag inside a makeup bag in the trunk.  Trooper Lewis testified that he saw a makeup bag during the traffic stop, it "was filled with pencils and brushes," and he "just kind of pulled them back and didn't see anything and threw it back in the trunk."

**{¶8}** The State presented evidence that plastic bags Trooper Lewis seized from the trunk contained: (1) 75.2428 grams which contained methamphetamine; (2) 0.5457 grams which contained heroin; (3) 46.3740 grams which contained heroin; (4) 88.1642 grams which contained heroin; (5) 9.8991 grams which contained heroin; (6) 50.7583 grams which contained fentanyl; (7) 1.4953 grams which contained cocaine; (8) 6.2985 grams which contained flurofentanyl and fentanyl; (9) 151.6287 grams which contained flurofentanyl and fentanyl; (10) 24.3509 grams which contained heroin; and (11) 3.1403 grams which contained heroin.[1] Plastic bags collected from Enterprise contained: (1) 125.7157 grams which contained fentanyl; (2) 1.0191 grams which contained flurofentanyl and fentanyl; (3) 0.8005 grams which contained flurofentanyl and fentanyl; and (4) 0.3733 grams which contained oxycodone (this was the weight and analysis for one of 120 tablets). The margin of error on each weight was plus or minus 0.0076 grams.

**{¶9}** Love testified that she met Crumpton through a mutual friend about three weeks before the traffic stop, and they were potentially going to date. To her knowledge, he was unemployed and did not have a license at the time. The day before the traffic stop, Crumpton asked her to drive a vehicle for him the next day because she had a license. Love testified that the day of the traffic stop, she learned the purpose of the trip "was for us to traffic drugs, basically." When asked about her involvement with the drugs, Love testified, "My involvement was that I was driving. The second involvement was I had put money into - -into some of the drugs, and I had some of my own personal stuff in my bag."

---

[1] Some bags which contained heroin also contained fentanyl. The State asked the jury to consider those bags only with respect to the heroin-related charges.

{¶10}   Love testified that she did not rent the vehicle or know who did.  She testified that Crumpton "already had the vehicle and he pulled up to my house and we got in the car."  She also testified that Crumpton asked her for a loan to buy drugs, and she gave him $4,000. She did not know what kind of drugs he was going to buy.  Love testified that she brought 120 Percocet pills, or "percs," which belonged to and had been prescribed to her. The pills were in her makeup bag, which she threw in the trunk when Crumpton picked her up.  Love testified that if there was fentanyl in her bag, she did not put it in there or know how it got there.  Love testified that she and Crumpton made two stops at gas stations during their trip and that Crumpton accessed the trunk during them. She did not know what he was doing in there. Love testified that she was supposed to drop Crumpton off in Ironton and return to Detroit.  Crumpton instructed her to leave the vehicle at the house of one of his parents. Love testified that she pleaded guilty to 3 drug-related felonies in connection with the traffic stop and faced a potential sentence of 10.5 years.

{¶11}   The State presented footage of Love and Crumpton conversing in the back seat of Trooper Lewis's cruiser.  At one point, Love says, "Spend my fuckin' $5,000 on that dope" and something about losing her money and "percs." Crumpton gives an indecipherable response and around 15 seconds later tells Love, "No statement," and, "That's not our car." The State also presented evidence that after his arrest, Crumpton called his mom from jail and told her, "I won't be seeing you for a long time," and "I can't say too much on the phone." The next day, he made other calls in which he made statements like, "I'm about to do 10 years in prison bro," and "I just pray to God that I can beat this shit man.  I think I can so.  As long as I don't, as long as I don't say too much on this motherfucking phone."  He also called the third-party who rented the vehicle.

{¶12} When the jury initially returned the verdict forms, the court noticed the form for Count Fourteen was incomplete and directed the jury to continue its deliberations. Subsequently, the jury again returned the verdict forms, and the court announced that the jury had found Crumpton guilty on all the remaining counts and specifications and discharged the jury. However, only 11 of the 12 jurors signed the verdict form for Count Two.

{¶13} The trial court found that for purposes of sentencing, Counts One and Seven merged, Counts Two and Eight merged, Counts Three and Nine merged, Counts Four and Ten merged, and Counts Five and Eleven merged. The State elected to proceed to sentencing on Counts One, Two, Three, Four, and Five. The court did not merge Counts Thirteen or Fourteen with any other counts. The court imposed an aggregate sentence of 24 to 29.5 years, with 16 years being mandatory.

## II.  ASSIGNMENTS OF ERROR

{¶14} Crumpton presents three assignments of error:

Assignment of Error I:  The trial court committed plain error when it accepted a non-unanimous written jury verdict on Count Two.

Assignment of Error II:  The trial court erred in denying Mr. Crumpton's motion to dismiss.

Assignment of Error III:  The state failed to introduce sufficient evidence to support Mr. Crumpton's conviction for the drugs recovered by the rental vehicle company.

## III.  NON-UNANIMOUS VERDICT

{¶15} In the first assignment of error, Crumpton contends the trial court committed plain error when it accepted a non-unanimous written jury verdict on Count Two. Crumpton asserts that Crim.R. 31(A) requires a unanimous written verdict signed by all

jurors concurring therein and that R.C. 2945.171 also requires a written verdict signed by all jurors concurring therein. Crumpton maintains that the verdict form for Count Two contains signatures of only 11 of the 12 jurors and that "[t]he trial court did not poll the jury or otherwise discern if the jury's verdict was unanimous on Count Two before they were discharged." Therefore, he asserts that the trial court committed an obvious error when it accepted the non-unanimous written verdict on Count Two. And he asserts that the error affected his substantial right to a unanimous jury verdict. The State concedes that Crumpton's conviction and sentence for Count Two must be vacated but asserts that we should remand for resentencing on Count Eight, which the trial court merged with Count Two. Crumpton agrees.

{¶16} Crim.R. 52(B) states: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "It is the defendant's burden to 'establish that an error occurred, it was obvious, and it affected his or her substantial rights.'" *State v. Shields*, 2023-Ohio-2331, ¶ 72 (4th Dist.), quoting *State v. Fannon*, 2018-Ohio-5242, ¶ 21 (4th Dist.). To affect substantial rights, "the trial court's error must have affected the outcome of the trial." *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶17} "'Ohio has long recognized that a nonunanimous verdict is unconstitutional and void.'" *State v. Martin*, 2024-Ohio-2408, ¶ 16 (4th Dist.), quoting *State v. Scott*, 2021-Ohio-2676, ¶ 17 (8th Dist.), citing *Work v. State*, 2 Ohio St. 296 (1853), *overruled on other grounds*, *State ex rel. Columbus v. Boyland*, 58 Ohio St.2d 490 (1979), syllabus. In

addition, Crim.R. 31(A) states: "The verdict shall be unanimous. It shall be in writing, signed by all jurors concurring therein, and returned by the jury to the judge in open court." And R.C. 2945.171 states: "In all criminal cases the verdict of the jury shall be in writing and signed by each of the jurors concurring therein."

**{¶18}** "'The requirement imposed under Crim.R. 31(A) and R.C. 2945.171 that a jury verdict in a criminal case be in writing is procedural rather than substantive.'" *State v. Martinez*, 1995 WL 680005 (6th Dist. Nov. 17, 1995), quoting *State v. Carmack*, 61 Ohio App.3d 351, 355 (1st Dist. 1989). "But no conviction may stand on a non-unanimous verdict because a defendant has a 'substantial right to a unanimous jury verdict.'" *State v. Pippins*, 2020-Ohio-503, ¶ 29 (10th Dist.), quoting *State v. Rawson*, 2016-Ohio-1403, ¶ 24 (10th Dist.). "Thus, an unanimity error is a 'defect[ ] affecting substantial rights.'" (Alteration in original). *Id.*, quoting Crim.R. 52(B).

**{¶19}** In this case, the trial court committed plain error when it accepted a non-unanimous written jury verdict on Count Two. The verdict form on Count Two contains the signatures of only 11 of the 12 jurors, and the trial court did not ascertain whether the verdict on Count Two was unanimous before it discharged the jury. Accordingly, we sustain the first assignment of error, reverse Crumpton's conviction on Count Two, and remand for the trial court to resentence him on Count Eight, possession of heroin, with major drug offender specification, which the court previously merged into Count Two for sentencing purposes. *See State v. Turner*, 2021-Ohio-2216, ¶ 11 (2d Dist.), quoting *State v. Baker*, 2018-Ohio-1865, ¶ 22 (2d Dist.) ("'Where offenses are merged for sentencing and the conviction for the offense upon which the defendant was sentenced is vacated,

the trial court must resentence the defendant on the offense that was merged with the vacated offense, again merging any offenses as appropriate'").

## IV. MOTION TO DISMISS

{¶20} In the second assignment of error, Crumpton contends the trial court erred in denying his motion to dismiss. Crumpton maintains that he presented evidence which established that Trooper Lewis engaged in selective enforcement by targeting black motorists for traffic stops and searches, in violation of Crumpton's equal protection rights, and that the remedy for selective enforcement is dismissal. Alternatively, he asks us to remand to the trial court "to develop a more expansive record on his claim of selective enforcement." The State contends we should overrule this assignment of error "on procedural grounds alone" because the trial court properly denied the motion to dismiss as untimely under Crim.R. 12. Alternatively, the State asserts that the selective enforcement claim lacks merit.

{¶21} The trial court denied the motion to dismiss on both procedural grounds, i.e., it was untimely, and substantive grounds. In his appellate brief, Crumpton challenges only the substantive grounds for the denial of his motion. At oral argument, Crumpton did challenge the procedural grounds for the court's ruling. However, "'[a] party may not advance new arguments for the first time at oral argument.'" *In re C.R.*, 2024-Ohio-2954, ¶ 24 (11th Dist.), quoting *State v. Snider*, 2022-Ohio-4566, ¶ 25 (11th Dist.). *See also Hughes v. Hughes*, 2020-Ohio-4653, ¶ 19 (10th Dist.) (a party may not "raise an argument for the first time at oral argument, particularly when the party had ample opportunity to explore such issues in its brief"). "When an appellant's initial brief fails to mention an argument as a basis for reversing the judgment under review, we need not address that

argument in deciding the appeal." *State v. Roberts*, 2017-Ohio-2998, ¶ 85, citing *State v. Quarterman*, 2014-Ohio-4034, ¶ 17-19. Because Crumpton's initial brief failed to mention his argument challenging the procedural grounds for the denial of his motion, it is not properly before this court.

**{¶22}** "When a trial court grants judgment on multiple, alternative bases and an appellant does not challenge one of those bases on appeal, [an appellate court] will uphold the judgment on the unchallenged basis." *Schutte v. Summit Cty. Sheriff's Office*, 2018-Ohio-2565, ¶ 21 (9th Dist.). And because Crumpton did not properly challenge one of the alternative bases for the denial of his motion to dismiss, we uphold the denial on the unchallenged basis. However, we observe that even if we entertained Crumpton's oral argument regarding the procedural grounds for the denial of his motion, it would fail because he provided no legal authority to support it. *See generally State v. Trammell*, 2017-Ohio-8198, ¶ 29 (12th Dist.), citing App.R. 16(A)(7) ("An appellant has the burden of demonstrating error on appeal through an argument that is supported by citations to legal authority and facts in the record").

**{¶23}** For the foregoing reasons, we overrule the second assignment of error.

## V. SUFFICIENCY OF THE EVIDENCE

**{¶24}** In the third assignment of error, Crumpton contends the State failed to introduce sufficient evidence to support his "conviction for the drugs recovered by the rental vehicle company." Crumpton was convicted of offenses related to two types of drugs recovered by Enterprise—oxycodone and fentanyl. However, his argument focuses on his conviction on Count Five for aggravated trafficking in drugs, which pertains to the oxycodone. Notably, even without the fentanyl recovered by Enterprise, the amount of

the drug Trooper Lewis found was enough to support Crumpton's first-degree felony conviction for trafficking in a fentanyl-related compound with major drug offender specification.

**{¶25}** Crumpton maintains that the State failed to produce sufficient evidence to convict him as either a principal offender or an aider or abettor. Crumpton asserts that to sustain a conviction as a principal offender, the State had to prove that he "had control or possession of the drugs in question." He acknowledges constructive possession exists when an individual knowingly exercises dominion and control over an object but asserts that the State failed to show that he exercised dominion and control over the pills and was consciously aware of them prior to the traffic stop. Crumpton claims it is undisputed that the pills containing oxycodone belonged to Love, that she put the pills in her makeup bag, and that she threw the bag in the trunk before the trip began. He also asserts that Love told him she had the "percs" in her bag while sitting in the back of the cruiser. Crumpton asserts that he was not the driver of the vehicle, and there is insufficient evidence to establish that he rented the vehicle. He also claims there is no evidence he knew about the oxycodone pills before Love talked about them in Trooper Lewis's cruiser. Crumpton maintains that his "lack of knowledge" is "bolstered" by the fact that "Trooper Lewis failed to uncover the pills in the makeup bag during his search."

**{¶26}** Crumpton also contends the State failed to produce sufficient evidence to establish that he "knowingly supported, assisted, encouraged, cooperated with, advised, or incited Ms. Love to traffic the oxycodone pills." He claims the State "did not introduce any physical evidence, such as cell phone records or text messages, nor did it present any statements or testimony to show [he] had knowingly aided and abetted Ms. Love."

He asserts Love's testimony shows that the oxycodone belonged to her, she packaged it in her makeup bag before being picked up, and she put the bag in the trunk. He contends Love's statements indicate that he "was unaware of the oxycodone pills contained in her makeup bag and it was her independent choice to bring the pills along in order to sell them." Therefore, there is insufficient evidence to establish his "intent to knowingly aid and abet in the trafficking of the oxycodone pills."

**{¶27}** In reviewing the sufficiency of the evidence for a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, fn. 4 (1997), and following *Jackson v. Virginia*, 443 U.S. 307 (1979). "A sufficiency assignment of error challenges the legal adequacy of the state's prima facie case, not its rational persuasiveness." *State v. Anderson*, 2019-Ohio-395, ¶ 13 (4th Dist.). "That limited review does not intrude on the jury's role 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Musacchio v. United States*, 577 U.S. 237, 243 (2016), quoting *Jackson* at 319. A reviewing court will not overturn a conviction based on insufficient evidence "'unless reasonable minds could not reach the conclusion that the trier of fact did.'" *State v. Cook*, 2019-Ohio-4745, ¶ 15 (4th Dist.), quoting *State v. Bradshaw*, 2018-Ohio-1105, ¶ 15 (4th Dist.).

**{¶28}** R.C. 2925.03(A)(2) states: "No person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled

substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person." R.C. 2901.22(B) defines the culpable mental state of "knowingly":

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

**{¶29}** R.C. 2925.03(C)(1) states that with certain exceptions, "[i]f the drug involved in the violation is any compound, mixture, preparation, or substance included in schedule I or schedule II, . . . whoever violates division (A) of this section is guilty of aggravated trafficking in drugs." This offense is a fourth-degree felony unless an exception applies. R.C. 2925.03(C)(1)(a). The trial court instructed the jury that oxycodone is a schedule II controlled substance.

**{¶30}** R.C. 2923.03(A)(2) states that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall . . . [a]id or abet another in committing the offense." "A conviction for aiding and abetting under R.C. 2923.03(A)(2) requires the state to prove, beyond a reasonable doubt, 'that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal.'" *State v. Smith*, 2022-Ohio-371, ¶ 53 (4th Dist.) ("*Smith*"), quoting *State v. Johnson*, 93 Ohio St.3d 240 (2001), syllabus. "'Participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is

committed.'" *Johnson* at 245, quoting *State v. Pruett*, 28 Ohio App.2d 29, 34 (4th Dist.1971). However, "'the mere presence of an accused at the scene of a crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor.'" *Id.* at 243, quoting *State v. Widner*, 69 Ohio St.2d 267, 269 (1982). "This rule is to protect innocent bystanders who have no connection to the crime other than simply being present at the time of its commission." *Id.*

**{¶31}** "We further observe that the complicity statute does not require the state to charge the defendant with complicity." *Smith* at ¶ 54. "Instead, R.C. 2923.03(F) allows the state to charge the defendant as a principal offender: '[a] charge of complicity may be stated in terms of [the complicity statute], or in terms of the principal offense.'" (Bracketed material in original.) *Id.*, quoting R.C. 2923.03(F).

**{¶32}** "To sustain an R.C. 2925.03(A)(2) trafficking conviction as a principal offender, the state must prove that a defendant had control over, *i.e.*, possessed, the illegal substance." *Smith* at ¶ 59, citing *State v. Cabrales*, 2008-Ohio-1625, ¶ 30. Possession "means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). "Whether a person knowingly possessed a controlled substance 'is to be determined from all the attendant facts and circumstances available.'" *Smith* at ¶ 60, quoting *State v. Teamer*, 82 Ohio St.3d 490, 492 (1998).

**{¶33}** Possession "'may be individual or joint, actual or constructive.'" *State v. Whitehead*, 2022-Ohio-479, ¶ 89 (4th Dist.), quoting *State v. Wolery*, 46 Ohio St.2d 316, 332 (1976). "Actual possession exists when the circumstances indicate that an individual

has or had an item within [the individual's] immediate physical possession." *State v. Fry*, 2004-Ohio-5747, ¶ 39 (4th Dist.). "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within [the individual's] immediate physical possession." *State v. Hankerson*, 70 Ohio St.2d 87 (1982), syllabus. "For constructive possession to exist, the state must show that the defendant was conscious of the object's presence." *Whitehead* at ¶ 89, citing *Hankerson* at 91. "Both dominion and control, and whether a person was conscious of the object's presence, may be established through circumstantial evidence." *Smith*, 2022-Ohio-371, at ¶ 62 (4th Dist.). "Moreover, 'a factfinder can "conclude that a defendant who exercises dominion and control over an automobile also exercises dominion and control over illegal drugs found in the automobile."'" *Id.* at ¶ 64, quoting *State v. Yakimicki*, 2013-Ohio-2663, ¶ 23 (10th Dist.), quoting *State v. Rampey*, 2006-Ohio-1383, ¶ 37 (5th Dist.).

**{¶34}** In this case, the prosecution presented sufficient evidence that, if believed, established that Crumpton knowingly transported, and exercised dominion and control over, the oxycodone, or that he knowingly aided or abetted the principal offender in committing the offense. Love testified that she and Crumpton traveled from Michigan to Ohio for the purpose of trafficking drugs and that Crumpton provided the vehicle for the trip. There is evidence Crumpton knew the third-party who rented the car and that Crumpton exercised dominion and control over the car—he drove the car to Love's house, asked her to drive the car to Ohio for the purpose of trafficking drugs, accessed the trunk during the trip, and instructed Love on where to take the car after she dropped him off. Crumpton's dominion and control over the car permitted an inference that he also had dominion and control over the oxycodone discovered inside it. *See Smith* at ¶ 64-65.

**{¶35}** In addition, the jury could have inferred that Crumpton knew the oxycodone was in the vehicle and knew or had reasonable cause to believe that it was intended for sale or resale by him or another person. Again, Love testified that the purpose of the trip was trafficking drugs and that she loaned Crumpton money to buy drugs. It is true Love testified that the pills at issue were prescribed to her and that they were in her makeup bag, which she put in the trunk. However, the pills were in a clear bag, not a prescription bottle. The clear bag was in a black bag inside Love's makeup bag, and the State presented evidence which supports an inference that Crumpton opened the makeup bag and black bag during the trip. There was fentanyl in the black bag, Love denied any knowledge of it, and she testified that Crumpton accessed the trunk during their trip. Although Crumpton claims there is a specific time in the cruiser footage when Love tells him she has "percs" in her bag, we did not hear such a statement at that point in the footage. Much of the conversation around that time is indecipherable. There is discussion of Love's bag, but we heard no mention of "percs" then. There is a later point in the footage when Love makes a comment about losing her "percs." Crumpton's initial response is indecipherable, but he does not appear to be surprised by her comment. And shortly after it, he tells Love to make "[n]o statement" and suggests a defense—the car is not theirs.

**{¶36}** Because the State introduced sufficient evidence to support the conviction on Count Five, we overrule the third assignment of error.

## VI. CONCLUSION

**{¶37}** For the foregoing reasons, we sustain the first assignment of error and overrule the second and third assignments of error. We reverse Crumpton's conviction

on Count Two and remand for the trial court to resentence him on Count Eight, possession of heroin, with major drug offender specification.  We affirm the trial court's judgment in all other respects.

JUDGMENT AFFIRMED IN PART
AND REVERSED IN PART.
CAUSE REMANDED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART and that the CAUSE IS REMANDED. Appellant and appellee shall split the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the SCIOTO COUNTY COURT OF COMMON PLEAS to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
      Michael D. Hess, Judge



## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**