[Cite as *State v. Burney*, 2020-Ohio-504.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| | | No. 15AP-197 |
| Plaintiff-Appellee, | : | (C.P.C. No. 14CR-1824) |
| | | No. 15AP-198 |
| v. | : | (C.P.C. No. 14CR-2868) |
| | | No. 15AP-199 |
| Percy R. Burney, Sr., | : | (C.P.C. No. 14CR-1326) |
| Defendant-Appellant. | : | (REGULAR CALENDAR) |

D E C I S I O N

Rendered on February 13, 2020

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Seth L. Gilbert*, for appellee. **Argued:** *Seth L. Gilbert.*

**On brief:** *Robinson & Brandt, P.S.C.*, and *Jeffrey M. Brandt*, for appellant. **Argued:** *Jeffrey M. Brandt.*

APPEALS from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} Defendant-appellant, Percy R. Burney, Sr., appeals a February 25, 2015 judgment of the Franklin County Court of Common Pleas in which the trial court convicted him of numerous drug-related offenses and sentenced him to 40 years in prison.

{¶ 2} On March 14, 2014, a Franklin County Grand Jury indicted Burney and eight other defendants in a 42-count indictment in case No. 14CR-1326. Burney was indicted for engaging in a pattern of corrupt activity, in violation of R.C. 2923.32; attempted murder, in violation of R.C. 2903.02 and 2923.02; two counts of felonious assault, in violation of R.C. 2903.11; tampering with evidence, in violation of R.C. 2921.12; six counts of trafficking in heroin, in violation of R.C. 2925.03; two counts of illegal drug manufacture, in violation of R.C. 2925.04; and having a weapon while under disability, in violation of R.C. 2923.13. The

count regarding engaging in a pattern of corrupt activity did not state what offenses constituted the "pattern of corrupt activity" as defined in R.C. 2923.31(E) and (I).

{¶ 3} On April 10, 2014, a Franklin County Grand Jury indicted Burney and six other defendants for crimes associated with the same alleged pattern of corrupt activity in case No. 14CR-1824. It was the same grand jury foreperson that indicted the March 14, 2014 case. This indictment charged Burney with another count of engaging in a pattern of corrupt activity, in violation of R.C. 2923.32; possession of heroin, in violation of R.C. 2925.11; possession of cocaine, in violation of R.C. 2925.11; and six counts of having a weapon while under disability, in violation of R.C. 2923.13. The engaging in a pattern of corrupt activity count again did not state what specific offenses constituted the "pattern of corrupt activity" but did incorporate each of the offenses indicted in case No. 14CR-1315 against co-defendant Jack Morris as predicate offenses for this offense, as well as Counts 2 through 27 of that indictment.

{¶ 4} On May 30, 2014, a Franklin County Grand Jury, this time with a different foreperson signing the indictment, indicted Burney and eight other defendants for engaging in a pattern of corrupt activity, in violation of R.C. 2923.32, in case 14CR-2868. This count again did not state what specific offenses constituted the "pattern of corrupt activity" but incorporated each of the offenses indicted in case Nos. 14CR-1315 and 14CR-1825, as well as Count 2 of that indictment, as predicate offenses for this offense.

{¶ 5} The first indictment appears to have been based on evidence obtained via wiretaps and information proffered by cooperating members of the drug dealing group. The second indictment was based on the fruits of a search of Burney's house at the conclusion of the wiretap investigation. The third indictment was intended to correct perceived deficiencies in the first two attempts to indict a pattern of corrupt activity.

{¶ 6} On July 16, 2014, State of Ohio, plaintiff-appellee, filed a motion to join case Nos. 14CR-1326, 14CR-1824, and 14CR-2868 into a single case for trial. On July 21, 2014, Burney filed a motion opposing the motion to join. On July 22, 2014, Burney filed a motion to sever, arguing he should not be tried with co-defendants because such would have the effect of depriving him of his right to confront and cross-examine the witnesses against him. Burney also filed motions to dismiss the counts for engaging in a pattern of corrupt activity

on grounds they failed to properly give notice of the predicate offenses underlying the counts and that the counts were duplicative of each other.

{¶ 7} The trial court never issued any written ruling on the motions but it held a hearing on December 12, 2014. During the hearing, the court suggested the issue of joinder had been taken care of at a previous status conference, but the record does not reflect any such disposition and the state suggested the issue had not been resolved. During the hearing, the parties discussed dismissing two of the counts for engaging in a pattern of corrupt activity but no dismissal was ever filed. The trial court suggested that once the dismissal took place, the indictments would essentially be consolidated and renumbered for trial. The defense objected that it was extremely challenging to determine which counts were going forward to trial or to match up conduct with the generic allegations in the several indictments and noted it had never been provided with a sufficiently detailed bill of particulars. The defense also suggested that for appellate purposes, dismissals and renumbering should be put on the record. The prosecution responded to the lack of clarity by indicating that it would go through the evidence with defense counsel to explain which matters in the indictment were supported by which evidentiary items and that it had prepared a chart of the offenses.

{¶ 8} No order consolidating the cases or joining the defendants for trial was ever filed or read into the record. According to statements made during trial, the counts were, in fact, renumbered. Yet, no amended or renumbered indictment was ever filed. Although an e-mail chain was filed mid-trial that sets forth the wiretap files that correspond to each count of the Morris indictment in case No. 14CR-1315, no detailed bill of particulars was filed and no chart showing the relationship between the renumbered counts and the original indictments was ever filed. Although there was a listing of renumbered offenses within the jury instructions, a copy of the jury instructions was not filed, and the trial court did not read that portion of the jury instructions into the record when it orally instructed the jury. While the trial court noted on the first day of trial that the pattern of corrupt activity counts in the first two indictments were being dismissed, no entry was ever issued to that effect. Thus, it is difficult with the record that is available on appeal to determine which of the indicted charges Burney was ultimately tried for and even more difficult to be sure what relation those charges bear to the originally indicted offenses. Notwithstanding

these problems, Burney and two other defendants were tried together before a jury in a four-week trial in early 2015.

{¶ 9} At trial, two detectives testified to the results of the wiretapping operation and played several hours of recorded telephone calls, in which Burney and one of his co-defendants, Keith J. Pippins, Jr., discussed drug dealing with each other and with other members of the alleged enterprise. There were several calls in which Burney ordered drugs from Pippins. There were also calls in which Burney agreed, at Pippins' request, to procure a drug addict to test the potency of Pippins' drugs. There were also calls regarding an incident in which a customer of Pippins robbed him, and Pippins spoke to Burney about his desire to find the robber and told Burney to get weapons. Then, following a shooting at which the robber was the target, another call transpired between Pippins and Burney, in which Burney told Pippins that people in the neighborhood were saying Pippins and Burney had perpetrated the shooting. One detective testified, over objection, that this was indeed an "organization" devoted to drug dealing. Some jail calls were also played, including one in which Pippins discussed retaliation against a former co-defendant who was planning to testify.

{¶ 10} A detective who conducted surveillance for the investigation testified that police generally survey persons overheard talking on telephone calls. However, he admitted that he never actually saw anyone with drugs, and another prosecution witness admitted that law enforcement had not surveilled the shooting and were unable to stop it from occurring.

{¶ 11} Another detective and a Federal Bureau of Investigation agent testified regarding the contents of various phones that were seized when authorities searched houses associated with the targets of the wiretap investigation on March 7, 2014. Two detectives authenticated photographs taken during the execution of search warrants and to present evidence recovered at the scene of the shooting, which was alleged to have been part of the drug dealing enterprise involving Burney. The state introduced testimony and stipulations regarding the drugs and weapons found during the searches of Burney's and Pippins' residences.

{¶ 12} Former co-defendants, Morris, Tyler Griffin, and Larry Stevenson, who agreed to cooperate with the prosecution in exchange for favorable plea agreements, also

testified. Morris confirmed that he and Pippins were partners during the period of the wiretap investigation, pooled their money in order to buy drugs, and split the profits of dealing evenly between them. Although Morris did not include Burney in the partnership he described, he did testify that he sold ounces of heroin to Burney on two occasions. He also testified, over an objection based on the confrontation clause, that Pippins told him Burney was supposed to dispose of the firearm used in the shooting. He added he feared retaliation from his former co-defendants, including Burney, as a result of his decision to testify.

{¶ 13} Griffin testified that he and Pippins were involved together in the drug trade but stated they were solo individuals using people as needed. He said nothing with specific regard to Burney and did not identify him. Stevenson also confirmed Pippins was engaged in drug dealing but stated he saw Burney with Pippins only twice, once at a bar, and once at Pippins' house.

{¶ 14} On January 29, 2015, after several weeks of trial, the parties gave closing arguments. During rebuttal, the prosecutor made statements to the effect that the defendants' lifestyles were built on drugs and that drugs kill people. The defense objected and moved for a mistrial. The court overruled the objection and denied the motion.

{¶ 15} By the time of closing, some jurors were starting to have scheduling problems due to the lengthy nature of the proceedings. Juror No. 7 was therefore excused and Alternate No. 2 took her place. The jury did not reach a verdict before Alternate No. 2 also had an unavoidable scheduling conflict. Thus, after one day of deliberation, Alternate No. 2 was replaced in her role as Juror No. 7 by another alternate and deliberation began anew on Monday February 2, 2015.

{¶ 16} On Friday, February 6, 2015, the bailiff brought to the court's attention that one juror felt that the others were attempting to intimidate her. In light of this, the trial court suggested to the parties and their counsel that it should perhaps give an instruction and a modified charge pursuant to *State v. Howard*, 42 Ohio St.3d 18, 26 (1989). Thereafter, if the jury still could not reach a verdict as to all counts by the end of that day, the court would call them in and take verdicts on whatever counts they had reached a verdict and declare a mistrial as to any others.

{¶ 17} Having considered the matter, the trial court then gave the jury a modified charge pursuant to *Howard*. After more than three additional hours of deliberation, at 3:00 p.m., the jury asked by what time they would have to complete deliberations that day in order to depart by 6:00 p.m. Rather than directly respond, the court and the parties agreed to submit a question to the jury whether it believed that continuing deliberations would be helpful regarding those things they had yet to consider. When the jury responded with an underlined, "No," the trial court decided to call the jury in and take whatever verdicts they had and declare a mistrial as to any remaining counts.

{¶ 18} As to Burney, the jury found him guilty of Count 1 (engaging in a pattern of corrupt activity); Counts 8, 16, 19, 21, and 30 (heroin trafficking); Count 31 (manufacture of drugs); and Counts 38 and 39 (heroin and cocaine possession, respectively). It found him not guilty of Count 11 (heroin trafficking); Count 17 (manufacture of drugs); Count 25 (attempted murder); and Counts 26 and 27 (felonious assault).

{¶ 19} Counsel requested a poll of the jurors. During the juror poll, Juror No. 7 requested to speak to the judge. A lengthy discussion ensued in which Juror No. 7 indicated that she had been pressured by her fellow jurors on a number of counts, had doubts as to others, and was confused about how she had voted on others. She also expressed that "all the charges [were] running together."

{¶ 20} On February 10, 2015, the trial court declared a mistrial on Counts 16 and 30 as to Burney. On February 11, 2015, counsel for Burney filed a motion for a mistrial or judgment of acquittal on all counts.

{¶ 21} On February 13, 2015, the trial court held a sentencing hearing. It found Burney not guilty of the weapon under disability Count 16 in case No. 14CR-1326, which the trial court also referred to as "Count 41 in the joint indictments." It also addressed what it referred to as Counts 42-47 "in the renumbered indictments or renumbered counts." Although multiple other persons lived at Burney's residence where firearms were recovered and neither Burney's DNA nor fingerprints were recovered from any of the weapons, the court found Burney guilty of possessing the weapons while under disability. After argument on renewed motions for mistrials and acquittals, the trial court proceeded to sentencing. In support of a lengthy sentence, the state introduced a video of Burney attacking the State's witness, Morris, after the guilty verdicts and discussed Burney's considerable criminal and

juvenile record. The trial court sentenced Burney to 11 years on Count 1 (engaging in a pattern of corrupt activity); 5 years on Count 8 (heroin trafficking); 8 years on Count 19 (heroin trafficking); 8 years on Count 21 (heroin trafficking); 5 years on Count 31 (manufacture of drugs); 5 years on Count 38 (possession of heroin); 1 year on Count 39 (possession of cocaine); and 2 years on each of Counts 42 through 47 (weapon under disability). On February 20, 2015, the prosecution requested, and the trial court granted, dismissal of the mis-tried Counts 16 and 30.

{¶ 22} On February 25, 2015, the trial court issued a judgment entry. The court noted that a mistrial had been declared as to Count 21, although it presumably meant Count 16 (the count that was renumbered "16" for trial may have been Count 21 of the case 14CR-1326 indictment) and Count 30. The trial court sentenced Burney to 11 years on Count 1 (engaging in a pattern of corrupt activity); 5 years on Count 8 (heroin trafficking); 8 years on Count 19 (heroin trafficking); 8 years on Count 21 (heroin trafficking); 5 years on Count 31 (manufacture of drugs); 5 years on Count 38 (possession of heroin); 1 year on Count 39 (possession of cocaine); and 2 years on each of Counts 42 through 47 (weapon under disability). Counts 1, 8, 19, 21, 38 were consecutive to all other sentences; Count 31 was concurrent with all others; Counts 42 through 47 were concurrent with each other but consecutive to all other sentences; and Count 39 was not specified as concurrent or consecutive, although at the sentencing hearing, the court orally stated that the one year for Count 39 would be served concurrently with the other sentences. There was also a consecutive one-year gun specification as to Count 39. In total, the court imposed a sentence of 40 years. Burney appeals the judgment, asserting the following assignments of error:

> [I.] The Trial Court Abused its Discretion and Constitutionally Erred by Denying Burney's Motion to Dismiss the Racketeering Charge and Denying His Motions for Mistrial and Acquittal on that Charge.

> [II.] The Trial Court Abused its Discretion and Constitutionally Erred by Denying the State's Motion for Joinder of Parties and Overruling Burney's Request for Severance of Parties and Burney's Motion for Mistrial.

[III.] The Trial Court Constitutionally Erred by Permitting Testimony that Violated Burney's Right to Confrontation.

[IV.] The Trial Court Erred and Constitutionally Erred by Overruling Burney's Motion for Mistrial on the Improper Closing Argument of the State's Attorney.

[V.] The Trial Court Plainly Erred and Constitutionally Erred by Failing to Order Mistrial on All Counts based upon Jury Member Pressure on Juror Seven.

{¶ 23} The plain error standard is implicated in some of Burney's assignments of error. According to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." To show plain error, an appellant must show: (1) there was error, (2) the error was plain, i.e., obvious, and (3) the error affected substantial rights. *State v. Tench*, 156 Ohio St.3d 85, 2018-Ohio-5205, ¶ 217, citing *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). In *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, the Supreme Court of Ohio explained:

[E]ven if the error is obvious, it must have affected substantial rights, and "[w]e have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." [*Barnes* at 27.] The accused is therefore required to demonstrate a reasonable *probability* that the error resulted in prejudice—the same deferential standard for reviewing ineffective assistance of counsel claims. *United States v. Dominguez Benitez*, 542 U.S. 74, 81-83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004) (construing Fed.R.Crim.P. 52(b), the federal analog to Crim.R. 52(B), and also noting that the burden of proving entitlement to relief for plain error "should not be too easy").

(Emphasis sic.) *Id.* at ¶ 22. Thus, an accused seeking to show that an obvious error affected his or her substantial rights and, thereby, the outcome must demonstrate "a reasonable *probability* that the error resulted in prejudice," such that there is a "probability of a different result [that] is sufficient to undermine confidence in the outcome of the proceeding." (Emphasis sic and internal quotation marks omitted.) *State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, ¶ 130.

{¶ 24} We address Burney's fifth assignment of error first because it impacts other assignments of error. Burney argues in his fifth assignment of error the trial court

committed plain error and constitutionally erred when it failed to order a mistrial on all counts after the jury poll based on Juror No. 7's uncertainty.

{¶ 25} "Crim.R. 31(D) grants the trial judge or any party the absolute right to have the jury polled after it has returned its verdicts." *State v. Sneed*, 63 Ohio St.3d 3, 14 (1992), fn. 5. "If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberation or may be discharged." Crim.R. 31(D). Thus, in the event of non-unanimity, a trial court has discretion (and therefore we review for abuse of discretion) whether to direct the jury "to retire for further deliberation" or to "discharge[]" the jury. *Id.* A court does not have discretion, however, to accept a non-unanimous verdict in a criminal case.

{¶ 26} Crim.R. 31(A) explicitly states that a "verdict shall be unanimous." The Ohio Constitution requires that, "[t]he right of trial by jury shall be inviolate, except that, in civil cases, laws may be passed to authorize the rendering of a verdict by the concurrence of not less than three-fourths of the jury." Ohio Constitution, Article I, Section 5. However, the Supreme Court has confirmed that Article I, Section 5 of the Ohio Constitution requires juror unanimity in criminal cases.

> [O]ur opinion is, that the essential and distinguishing features of the trial by jury as known at the common law, and generally, if not universally, adopted in this country, were intended to be preserved, and its benefits secured to the accused in all criminal cases, by the constitutional provisions referred to [Ohio Const. Art. 1, Sec. 5]. That it is beyond the power of the General Assembly to impair the right, or materially change its character; that the number of jurors cannot be diminished, or a verdict authorized short of a unanimous concurrence of all the jurors.

*Work v. State*, 2 Ohio St. 296, 306 (1853) (overruled as to the holding regarding the absolute immutability of the number of jurors in misdemeanor cases in *State ex rel. Columbus v. Boyland*, 58 Ohio St.2d 490 (1979), syllabus); *see also State v. Robbins*, 176 Ohio St. 362, 364 (1964); *McHugh v. State*, 42 Ohio St. 154, 156 (1884); *see also Richardson v. United States*, 526 U.S. 813, 820 (1999) (remarking that, "this Court has indicated that the [federal] Constitution itself limits a State's power to define crimes in ways that would permit juries to convict while disagreeing about means, at least where that

definition risks serious unfairness and lacks support in history or tradition"); *but cf. State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, ¶ 35 (plurality decision remarking that Ohio only imposes a unanimity requirement by rule).

{¶ 27} Because unanimity is required explicitly by rule and implicitly by the Constitution, when there is " '[i]n any case * * * the appearance of any uncertainty or contingency in a jury's verdict, it is the duty of the trial judge to resolve that doubt, for "there is no verdict as long as there is any uncertainty or contingency to the finality of the jury's determination." ' " *Sneed* at 14, quoting *United States v. Morris*, 612 F.2d 483, 489 (10th Cir.1979), quoting *Cook v. United States*, 379 F.2d 966, 970 (5th Cir.1967). Thus, " 'a jury has not reached a valid verdict until deliberations are over, the result is announced in open court, and no dissent by a juror is registered.' " *Id.* at 14, fn. 5, quoting *United States v. Taylor*, 507 F.2d 166, 168 (5th Cir. 1975). Yet, once a jury has been discharged, the verdict cannot be altered. *Sargent v. State*, 11 OHIO 472, 473 (1842).

{¶ 28} Thus, although a trial court has discretion about whether to discharge a jury or require its members to deliberate further, pursuant to Crim.R. 31(D), the Ohio Constitution and Crim.R. 31(A) prohibit a conviction based on a verdict that is not unanimous, at least as to outcome. A trial court has no discretion to accept a non-unanimous verdict in a criminal case because "no court has discretion to violate the law." *Frash v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 14AP-932, 2016-Ohio-360, ¶ 7; *Irvin v. Eichenberger*, 10th Dist. No. 16AP-657, 2017-Ohio-5601, ¶ 40. And no conviction may stand on a non-unanimous verdict because a defendant has a "substantial right to a unanimous jury verdict." *State v. Rawson*, 10th Dist. No. 14AP-1023, 2016-Ohio-1403, ¶ 24. A unanimity error always affects the outcome. Hence, such errors, if they exist, are plain and "may be noticed although they were not brought to the attention of the court." Crim.R. 52(B); *Rawson* at ¶ 23-24; *United States v. Ullah*, 976 F.2d 509, 514 (9th Cir.1992); *see generally Rogers* at ¶ 22.

{¶ 29} In this case, the jury initially announced verdicts finding Burney guilty of Count 1 (engaging in a pattern of corrupt activity); Counts 8, 16, 19, 21, and 30 (heroin trafficking); Count 31 (manufacture of drugs); and Counts 38 and 39 (heroin and cocaine possession, respectively). Thereafter, the defendants, including Burney, requested the jury be polled.

{¶ 30} As explained above, during the juror poll, Juror No. 7 indicated she had been pressured by her fellow jurors on a number of counts, had doubts as to others, and was confused about how she voted on others. Juror No. 7 kept detailed notes regarding her deliberations on all of the counts, although those notes are not part of the record on appeal.

{¶ 31} Initially, it is important to note that, in his fifth assignment of error, Burney does not raise a specific unanimity challenge to the guilty verdict on any of the counts. Instead, Burney maintains that because Juror No. 7 expressed misgivings about her guilty verdict on certain counts, the trial court committed plain error by failing to declare a mistrial on all counts.

{¶ 32} Outside the hearing of the jury, the trial court reviewed Juror No. 7's notes with regard to each count. With regard to Count 1, the following discussion took place:

THE COURT: Okay. You're Juror Number 7.

Okay. Now, with regard to the verdicts involving Keith Pippins, are these your verdicts?

JUROR 7: Yes.

THE COURT: Freely, voluntarily, and independently found and entered by you?

JUROR 7: Can I ask you a question, or can I say anything?

THE COURT: Yes. I'll tell you what. Why don't you write it down? Can you do that?

Let me just give you a piece of paper and a pen.

THE COURT: Thank you.

Okay. Okay. What I'm going to do then is I'm going to go through these individually with you. Okay?

All right. And let's see here. Okay. Count 1, I'm going to go -- these are all with regard to Mr. Pippins. Okay. What?

Tell you what. Do you want to approach?

JUROR 7: Yes.

THE COURT: Okay. Come on and do that.

Noise, again, please. Then we will need counsel up here as well.

[PIPPINS' COUNSEL]: Do you want the attorneys?

THE COURT: Yes. Noise, please.

- - -

Thereupon, the following discussion was held at the bench with the court and counsel outside the hearing of the jury:

THE COURT: Okay. Now, let me just get your note here. Okay. It says here some of the charges I wasn't quite clear about. Hence the reason for my further note.

Okay. So that's why I wanted to go over each one of these with you. And, basically, I'll hand them to you. Okay? And then --

JUROR 7: You know that packet that you gave us? If I could look at that.

THE COURT: Yes. Go get it.

JUROR 7: Thank you.

THE COURT: I think that was the one that said do we have to -- is it an all or nothing type of thing.

Come on up here, please. Thank you.

Now, how do you want to go through this? You got them all?

JUROR 7: Yeah.

THE COURT: Very good.

JUROR 7: I have detailed notes.

THE COURT: Let's go back to Count 1 then, and that starts right here. Showing us your notes, and we'll start out with Count 2, Keith Pippins, these are your notes, right?

JUROR 7: Yes.

THE COURT: What you've got here is Count 2, Count 2, guilty. And checkmark, that means you agree with that?

JUROR 7: I had questions. I had some questions.

THE COURT: With Count 2 you had a question, you say?

JUROR 7: Um-hmm.

(Tr. at 4359-61.)

**{¶ 33}** From the above excerpt, it is clear the trial court did not indicate verbally on the record the content of Juror No. 7's notes regarding Count 1. Instead, the court mentioned Count 1 briefly and then moved on to discuss Count 2.

**{¶ 34}** However, following the polling of Juror No. 7, the trial court stated, "I don't think – there was nothing with regard to Count 1." (Tr. at 4388.) Defense counsel did not object. After listing all of the counts in the indictment about which Juror No. 7 was uncertain or felt pressured into, the trial court stated, "Okay. And other than that, the court finds, as Juror Number 7 so stated, the remainder of the counts were freely, voluntarily, she was in accord with." (Tr. at 4389.)

**{¶ 35}** "A jury poll's purpose is to 'give each juror an opportunity, before the verdict is recorded, to declare in open court his assent to the verdict which the foreman has returned and thus to enable the court and the parties to ascertain with certainty that a unanimous verdict has in fact been reached and that no juror has been coerced or induced to agree to a verdict to which he has not fully assented.' " *State v. Monroe*, 10th Dist. No. 01AP-275 (Sept. 25, 2001), citing *State v. Hessler*, 90 Ohio St.3d 108, 121 (2000), *cert. denied*, 532 U.S. 998 (2001), quoting *Miranda v. United States*, 255 F.2d 9, 17 (1st Cir.1958). Here, when the trial court asked Juror No. 7 to write down any questions she may have, Juror No. 7 handed the trial judge a note reportedly stating: "some of the charges I wasn't quite clear about." (Tr. at 4360.) During the subsequent colloquy, Juror No. 7 never expressed any disagreement with her guilty verdict as to Count 1. Our impression of Juror No. 7 from reading the entire colloquy is that Juror No. 7 was eager to express her opinions regarding her verdict as to each count in the indictment on which she felt pressured or uncertain. Thus, in our view, the trial transcript supports the trial court's finding that Juror No. 7 did not have any reservations about the guilty verdict as to Count 1.

**{¶ 36}** In addition, the trial court subsequently issued a February 10, 2015 entry, in co-defendant Pippins' case, in which the court stated: "First, [Juror No. 7's] notes indicate that there was no problem with the first Count." (Feb. 10, 2015 Entry at 2.) Although the

February 10, 2015 entry was not filed in the present case for some reason, that entry addresses some of the counts jointly as applied to all of the co-defendants, as well as addresses some of the counts individually that apply only to individual defendants. In the entry, the trial judge painstakingly set out the events that occurred during his colloquy with Juror No. 7 based on the notes he had taken during the colloquy and the observations he made of Juror No. 7 as she discussed her verdicts on the various counts in the indictment. At the close of that entry, the trial court stated: "Based on the foregoing, this Court declares a mistrial as to those counts where Juror #7's statements caused a lack of unanimity." (Feb. 10, 2015 Entry at 3.)

{¶ 37} An appellate court reviewing a trial court's decision on a motion for mistrial generally defers to the judgment of the trial court, as it is in the best position to determine whether the circumstances warrant a mistrial. *State v. Walburg*, 10th Dist. No. 10AP-1087, 2011-Ohio-4762, ¶ 51, citing *State v. Glover*, 35 Ohio St.3d 18, 19 (1988). "If there is doubt whether a juror has agreed to the verdict, the court may interrogate the juror to clarify his or her answer." *Monroe*, citing *State v. Brumback*, 109 Ohio App.3d 65, 72 (9th Dist.1996). "The court's determination of whether further interrogation is necessary is given wide discretion because the 'trial court was in a better position to view the demeanor and actions of the juror.' " *Id.*, quoting *State v. Williams*, 73 Ohio St.3d 153, 167 (1995), *cert. denied*, 516 U.S. 1161 (1996).

{¶ 38} Here, the trial judge was in the best position to view the demeanor and actions of Juror No. 7 with regard to Count 1 and to make a determination as to whether she was certain regarding her verdict of guilty as to Count 1, whether it was the result of pressure from other jurors, or whether it was the product of the normal deliberative process. There was nothing in the record to refute the trial court's recollections and findings in its February 10, 2015 entry with regard to Count 1 and, in fact, the trial court's comments after his colloquy with Juror No. 7 support the court's conclusions in the February 10, 2015 entry. For these reasons, based on the plain error standard, we find the trial court did not err when it found Juror No. 7 was not uncertain or pressured with regard to her guilty finding as to Count 1.

**{¶ 39}** Juror No. 7 indicated that Count 8 was her intended verdict:

THE COURT: Count 8?

JUROR 7: That was okay.

THE COURT: That was okay.

(Tr. at 4364.) As to this count, the verdict was complete.

**{¶ 40}** As to Count 16, the following discussion took place:

THE COURT: Okay. Count 15?

JUROR 7: I was on the fence on this, but I voted guilty.

THE COURT: Well, do you believe that he was guilty? Did the state meet its burden of proof? Are you satisfied that it's a guilty verdict here?

Again, you reach a verdict based on your own decision, not upon the consensus, or what have you, just to be friendly.

JUROR 7: I think that's what I did there.

THE COURT: Why you did what?

JUROR 7: I think I was pressured into that decision.

THE COURT: Count 15 or which count?

I think we had gotten to -- I think we were at 15.

No. I'm sorry. We were at 16.

JUROR 7: We was here.

THE COURT: So that's what you're not sure. Everything else is fine but that one?

JUROR 7: Um-hmm.

THE COURT: No. That was not her verdict, at least at that point. I'm going to highlight that one. Just going to put a little highlight through so that I know. Her Counts 2 or 3, well we'll come back to that. Okay.

> [PIPPINS' COUNSEL]: I would like to note her language was she felt she was pressured.
>
> THE COURT: Yes. I understand that.
>
> Okay? Let me continue. Thank you.
>
> All right. Count 17. All right? There you've got question marks, and you've got some of your own notes there.
>
> JUROR 7: I have to say this too. I have no understanding of drugs and the terminology, you know, the language and stuff. I think I even mentioned that in here, and so they was talking about cutting stuff, melting stuff, I got to cut it, I got to fix it. Our understanding back there was not the same, and we would go around and around.
>
> THE COURT: With regard to 17, you're not sure?
>
> JUROR 7: Um-hmm.

(Tr. at 4365-67.)

{¶ 41} With regard to Count 16, the above discussion is somewhat unclear but suggests that Juror No. 7 felt pressured to find Burney guilty on that count. The trial court confirmed in its February 10, 2015 entry that hand gestures by Juror No. 7 showed she felt pressured into finding Burney guilty on Count 16. In the trial court's February 10, 2015 entry, the court found that "[a]lthough the transcript is unclear, the Court notes that in reviewing her notes and her statements, Count 15 was a guilty verdict she agreed with, but she was not certain as to Counts 16 and 17." The footnote accompanying the trial court's finding regarding Count 15 provides as follows: "The transcript appears to indicate that the discussion was in regard to Count 15, but at the bench, Juror #7's review of her notes at the time, including her hand gesture to the correct count at the bench conference to the specific counts, make it clear that it was Counts 16 and 17 she felt pressured into signing, and not Count 15." Therefore, based on the explanation provided by the court in its February 10, 2015 entry, we find the trial court properly found Juror No. 7 was pressured into finding Burney guilty on Count 16. Therefore, the trial court properly declared a mistrial on Count 16.

{¶ 42} With regard to Count 19, the following discussion took place:

THE COURT: Until you have questions, everything else is fine.

Count 19, you're okay with that? That has all three defendants in it.

JUROR 7: Um-hmm.

THE COURT: And you had a not guilty on Burney and not guilty on [the second co-defendant], I believe.

JUROR 7: Um-hmm.

The discussion continued:

THE COURT: Okay. And then with Mr. Pippins, I believe.

JUROR 7: Two charges.

THE COURT: Okay.

JUROR 7: Not guilty on gun. Guilty on transport, ship. Was he tried with transporting and shipping too?

THE COURT: I can't answer that. Okay? Not guilty on gun but guilty on transport with regard to Burney. Is that, in fact, your verdict?

JUROR 7: Yes.

(Tr. at 4367-68.) Thus, Juror No. 7 clearly indicated she found Burney not guilty of the gun specification but guilty of heroin trafficking. This conclusion is supported by the trial court's February 10, 2015 entry, in which the court found that Juror No. 7 "made it clear that her verdict, as to Percy Burney, was guilty, but not guilty on the firearm specification, which was the jury's overall verdict." Therefore, we find no plain error as to Count 19.

{¶ 43} With regard to Count 21, the following discussion took place:

THE COURT: With regard to Count 21, you believe that Mr. Burney is guilty. Is that your verdict?

JUROR 7: Um-hmm.

THE COURT: With Pippins you're not sure?

> JUROR 7: I was pressured into it.
>
> [PIPPINS' COUNSEL]: She was pressured into it.
>
> JUROR 7: I'm sorry.
>
> THE COURT: Don't worry about that.
>
> JUROR 7: Okay. I understand.

(Tr. at 4370.) It is clear the trial court construed the juror's statements here as indicating uncertainty as to Pippins only. This conclusion is supported by the trial court's February 10, 2015 entry, in which the court found that Juror No. 7 "agreed with the guilty verdict in Count 21 relating to Percy Burney."

{¶ 44} As to Count 30, after indicating she was not sure of her verdict, Juror No. 7 added that she had been pressured into it:

> THE COURT: All right. Count 30, this one here.
>
> JUROR 7: Huh-uh. That's why I got that scratched off.
>
> THE COURT: Not sure?
>
> JUROR 7: Huh-uh.
>
> * * *
>
> THE COURT: * * * Now, is that in regard to Count 30?
>
> JUROR 7: This is heroin.
>
> THE COURT: Okay.
>
> JUROR 7: For him.
>
> THE COURT: Yes. Is that your verdict, or do you have a problem with that?
>
> JUROR 7: I was pressured into deciding.
>
> THE COURT: Okay. Take that one out then.

(Tr. at 4372-73.) Count 30 was properly considered the subject of a mistrial and dismissed.

{¶ 45} Although Juror No. 7 expressed some reluctance, she stated that Count 31 was her true verdict:

THE COURT: Okay. Count 31.

JUROR 7: I finally came around on that.

THE COURT: Is that your verdict?

JUROR 7: Oh, yes. They had to play it and play it over and over again, though.

THE COURT: I understand that. That's what deliberations can involve.

* * *

All right. Count 31, I didn't catch on that one with regard to Mr. Pippins and Mr. Burney.

JUROR 7: I believe there was manufacturing.

THE COURT: Okay. Is that your verdict?

JUROR 7: Um-hmm.

(Tr. at 4372-73.)

{¶ 46} Juror No. 7 also indicated that Counts 38 and 39 were her true verdicts:

THE COURT: Count 38, possession of heroin, is that your verdict?

JUROR 7: I think this one I did.

THE COURT: You're okay with that?

JUROR 7: Um-hmm.

THE COURT: Count 39, possession of cocaine, Felony 3.

JUROR 7: I think this is on Burney. This is just Burney.

THE COURT: Correct.

JUROR 7: I don't have anything written down there.

THE COURT: No, you don't. Where does that leave you?

JUROR 7: Can you show me our signatures?

> THE COURT: Yes, absolutely. This is with regards to Mr. Burney.
>
> Hold on a second. I've got them right here. That should be the last one. Count 39, yes. There you go. Take a look.
>
> Is that your verdict?
>
> JUROR 7: Um-hmm.

(Tr. at 4376-77.)

{¶ 47} Burney argues the trial court should have declared a mistrial on all counts based on the notion that the pressure on Juror No. 7 was pervasive to the point that none of the verdicts reached could be considered valid. We disagree. With regard to some counts, Juror No. 7 indicated she felt pressured and recounted there was "a big fight about this" that left her "upset" and "crying." She indicated she had "[r]eal issues" with some counts. She also indicated some uncertainty, or at least initial uncertainty, with respect to some counts. She expressed confusion with respect to how she voted on a number of counts. She also indicated she voted "not guilty" on one count when the verdict forms reflect a guilty finding and that she voted "guilty" on one count when the verdict forms reflect a not guilty finding. She also expressed she was confused and that "all the charges [were] running together." However, with respect to many counts she did not indicate any lasting problems. At the conclusion of the discussion of her verdicts, the following conversation took place:

> THE COURT: Okay. All right. Very good. As long as you're up here then, for those things that you said yes, those are your verdicts, those are freely, voluntarily entered by you, and the other ones you just felt you were pressured? Is that a fair statement?
>
> JUROR 7: Yes.
>
> THE COURT: Those are your verdicts, and the other ones you're not sure?
>
> JUROR 7: Yes.

(Tr. at 4377-78.) In short, while the record in this case evidences a significant level of confusion on the part of all involved, not every count was rendered defective as a result. We find no error in the trial court's decision to take Juror No. 7's statements at face value and

hold that some of the counts reflected her free and voluntary verdicts. Therefore, we overrule Burney's fifth assignment of error.

{¶ 48} As we have overruled Burney's argument with respect to Count 1 in the above analysis, we must address Burney's first assignment of error. In Burney's first assignment of error, Burney argues the trial court abused its discretion and constitutionally erred when it denied his motion to dismiss the charge in Count 1, engaging in a pattern of corrupt activity, and denied his motions for mistrial and acquittal on that charge. Among the due process protections enumerated in Article I, Section 10 of the Ohio Constitution is the following: "no person shall be held to answer for a capital, or otherwise infamous, crime, unless on presentment or indictment of a grand jury." The purposes of an indictment are to give an accused adequate notice of the charge and to enable an accused to protect himself from any future prosecutions for the same incident. *State v. Buehner*, 110 Ohio St.3d 403, 2006-Ohio-4707, ¶ 7, citing *Weaver v. Sacks*, 173 Ohio St. 415, 417 (1962); *State v. Sellards*, 17 Ohio St.3d 169, 170 (1985). The Supreme Court has held:

> The sufficiency of an indictment is subject to the requirements of Crim.R. 7 and the constitutional protections of the Ohio and federal Constitutions. Under Crim.R. 7(B), an indictment "may be made in ordinary and concise language without technical averments or allegations not essential to be proved. The statement may be in the words of the applicable section of the statute, provided the words of that statute charge an offense, or in words sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged."

> An indictment meets constitutional requirements if it "first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."

*Buehner* at ¶ 8-9, quoting *State v. Childs*, 88 Ohio St.3d 558, 564-65 (2000), quoting *Hamling v. United States*, 418 U.S. 87, 117-18 (1974).

{¶ 49} In the present case, Burney raises three arguments under his first assignment of error with regard to Count 1, engaging in a pattern of corrupt activity: (1) Count 1 failed to sufficiently allege the predicate offenses constituting the pattern of corrupt activity;

(2) Count 1 failed to provide adequate notice and violated due process; and (3) the failure to obtain guilty verdicts on some of the predicate offenses requires an acquittal on Count 1.

{¶ 50} The first two arguments are related and will be addressed together. With regard to the first argument, that Count 1 failed to allege any predicate offenses constituting the pattern of corrupt activity, Burney asserts the indictment improperly relied on only one charge in the same indictment and the charges in other indictments as predicate offenses. Burney contends that the indictment referenced in Count 2 of the same indictment, but Burney was not named in Count 2. Burney also contends the indictment indicated it was incorporating offenses from another indictment, none of which named Burney. With regard to the second argument, Burney argues that incorporating other indictments violates his right to notice and due process. Burney claims that, in preparing for trial and defending the case, he was left to guess what conduct the state would allege was illegal.

{¶ 51} The language in the indictment tracked the language contained in R.C. 2923.32(A)(1), which is entitled "Engaging in pattern of corrupt activity; forfeiture." The indictment also then indicated it was incorporating "each" of the offenses indicted in case Nos. 14CR-1315, 14CR-1825, and Count 2 of the indictment as predicate offenses for Count 1. Count 2 of the indictment was based on obstructing justice under R.C. 2921.32 and listed only one co-defendant's name but not Burney's name.

{¶ 52} We find the indictment here complies with the requirements enunciated in *Buehner.* The indictment: (1) is in the words of the statute, R.C. 2923.32; (2) is in words sufficient to give Burney notice of all the elements of the offense of engaging in a pattern of corrupt activity; and (3) enables Burney to plead an acquittal or conviction in bar of future prosecutions for the same offense under R.C. 2923.32. Here, Burney had adequate notice of the predicate offenses because the indictment indicated it was incorporating "each" of the offenses indicted in case Nos. 14CR-1315, 14CR-1825, and Count 2 of the indictment as predicate offenses for Count 1. By incorporating "each" offense, it was incorporating every applicable offense, as well as Count 2 in the same indictment. The state did not rely on any offenses not listed in case Nos. 14CR-1315, 14CR-1825, and Count 2.

{¶ 53} The trial court indicated at a pre-trial hearing it did not have a problem with a predicate offense being incorporated by reference as long as the defendant had ready access to it. At trial, the court reiterated that Count 1 was sufficient because the state had

incorporated each of the offenses from the other two cases as predicate offenses, "so the defendants are on notice as to those predicate offenses." The state also filed an additional bill of particulars during trial, which included an e-mail inviting defense counsel to inform the state if further elaboration was necessary. The court subsequently found this amended bill of particulars provided sufficient notice.

{¶ 54} Furthermore, the bill of particulars filed here indicated "See Response to Request for Discovery for further information." At a pre-trial hearing, the prosecutor offered Burney's counsel to come to the prosecutor's office and review the discovery to work through various things, which the trial court noted was "unprecedented." At the same pre-trial hearing, Burney's counsel admitted that he had numerous communications with the prosecutor regarding the evidence in the case, and the prosecutor indicated that, instead of preparing a more specific bill of particulars in writing, the state provided "open file discovery" and offered "the opportunity to come in and go over it with [defense counsel]." The court called the prosecutor's offer to compile and organize all of the evidence to share with defense counsel a "de factor bill of particulars" that went "far beyond * * * the idea of an amendment to the bill of particulars."

{¶ 55} Based on the above, we conclude Count 1 of the indictment was not defective, but even if it did not give sufficient notice of the predicate offenses, Burney was given sufficient notice of the predicate offenses through open file discovery, the amended bill of particulars, and "unprecedented" prosecutorial cooperation, so as to render any defect not prejudicial. *See*, *e.g.*, *State v. Henson*, 6th Dist. No. L-17-1312, 2019-Ohio-229, ¶ 29 (because the indictment tracked the statutory language, the defendant had access to open file discovery, Crim.R. 7(D) allowed for the allegedly defective charging documents to be amended, and the predicate offense was clarified through a bill of particulars, the defendant could not demonstrate he was prejudiced by the alleged defect in the indictment); *State v. Renfroe*, 6th Dist. No. L-12-1146, 2013-Ohio-5179, ¶ 25 (even if the indictment was defective, the defendant was provided with open file discovery; thus, the failure to provide an amended bill of particulars was harmless), citing *State v. Evans*, 2d Dist. No. 20794, 2006-Ohio-1425, ¶ 24 (when the state allows open file discovery, a bill of particulars is not required); *State v. Dixon*, 10th Dist. No. 09AP-473, 2009-Ohio-6057, ¶ 5-6 (the indictment was not defective when the indictment listed the statutes the defendant was accused of

violating and the defendant had notice of the charges and the elements of those charges; additional information about the elements of the statutes and the evidence against the defendant were available through pursuit of a bill of particulars and criminal discovery). Accordingly, these arguments are without merit.

{¶ 56} With regard to the third argument, that the failure to obtain guilty verdicts on some of the predicate offenses required an acquittal on Count 1, Burney asserts that Count 1 was dependent on his committing two or more predicate offenses listed in R.C. 2923.31(I). Burney contends that, because the state failed to list any predicate offenses in the indictment, he defended on all claims, but, at trial, the state seemed to focus on attempted murder and two counts of felonious assault as predicate offenses to Count 1. Because the jury found him not guilty of those three offenses, Burney argues, one element of Count 1 could not be established and he could not be convicted of Count 1.

{¶ 57} As we indicated above, case No. 14CR-2868 incorporated by reference "each" of the offenses indicted in case Nos. 14CR-1315 and 14CR-1825, as well as Count 2 of the same indictment, as predicate offenses for Count 1. However, R.C. 2923.31(E) requires the state prove only two or more incidents of corrupt activity, regardless of whether Burney was acquitted or a mistrial was declared on any other number of predicate offenses. The jury found Burney guilty of three counts of trafficking in heroin, illegal manufacture of drugs, possession of heroin, and possession of cocaine, which all constitute an incident of "corrupt activity," pursuant to R.C. 2923.31(I)(2)(c) and could have provided the requisite predicate offenses. Therefore, this argument is without merit. For these reasons, we overrule Burney's first assignment of error.

{¶ 58} Burney argues in his second assignment of error the trial court erred when it joined the defendants and cases for trial. In non-capital cases, "[t]wo or more defendants may be charged in the same indictment, information or complaint if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses, or in the same course of criminal conduct." Crim.R. 8(B). However, "[i]f it appears that a defendant * * * is prejudiced by a joinder of offenses or of defendants in an indictment * * * or by such joinder for trial together of indictments * * *, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires." Crim.R. 14.

{¶ 59} According to Supreme Court precedent:

> To prevail on his claim that the trial court erred in denying his motion to sever, the defendant has the burden of demonstrating three facts. He must affirmatively demonstrate (1) that his rights were prejudiced, (2) that at the time of the motion to sever he provided the trial court with sufficient information so that it could weigh the considerations favoring joinder against the defendant's right to a fair trial, and (3) that given the information provided to the court, it abused its discretion in refusing to separate the charges for trial.

*State v. Schaim*, 65 Ohio St.3d 51, 59 (1992), citing *State v. Torres*, 66 Ohio St.2d 340, (1981), syllabus; *see also State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, ¶ 63. Examples of prejudice from improper joinder of defendants for trial include mutually antagonistic defenses, instances in which unfairly prejudicial evidence is admitted that would not be admissible against the defendant if the defendant were tried alone, instances in which exculpatory evidence that would be available to a defendant if he were tried alone would be unavailable in a joint trial, or situations in which a defendant's Sixth Amendment right of confrontation is thwarted by a co-defendant's Fifth Amendment right to refuse to testify or incriminate himself. *State v. Walters*, 10th Dist. No. 06AP-693, 2007-Ohio-5554, ¶ 23-27, citing *inter alia Zafiro v. United States*, 506 U.S. 534, 538-39 (1993); *Bruton v. United States*, 391 U.S. 123 (1968).

{¶ 60} Here, neither party to this appeal raises a question as to the second prong of the *Schaim* test, whether the initial motion provided sufficient information to permit the trial court to weigh the considerations involved in joinder. *See id.* at 59. Instead, the focus is on the first prong of *Schaim*, whether Burney can "affirmatively demonstrate" that his rights were prejudiced. *Id.* Burney posits three instances of prejudice. We address them in sequence.

{¶ 61} First, Burney argues that one detective in his trial was permitted to explain who the leaders of the alleged drug dealing organization were and offer an opinion as to hierarchy. When Burney objected that such testimony invaded the province of the jury, the state responded that counsel for a co-defendant had opened the door by asking questions in a similar vein. Burney argues this evidence would not have been considered but for his co-defendant having opened the door. However, the trial court did not rely on Burney's co-

defendant's opening of the door when it ruled on Burney's objection. Rather, the trial court essentially decided that the detective's testimony was proper lay opinion testimony under Evid.R. 701:

> THE COURT: I think the idea here is to who, according to the detective, had significant involvement in this, and they can explain what that involvement is.
>
> To the extent that you're saying, well, this is the leader, this is the leader, at this point in time, given where we are in the evidence right now, I'm going to agree with [Burney's Counsel] on this and basically say I don't want to hear the word "leaders" right now.
>
> But in terms of participation in, or being able to instruct others to do things or what have you, I'll allow that.

(Tr. at 1034.) Thus, this portion of the trial does not support Burney's argument against joinder because the court would presumably have admitted that same evidence on the same basis in a trial of Burney alone.

{¶ 62} Second, Burney argues that Pippins' counsel elicited testimony from Morris to the effect that he feared vengeance from Pippins and Pippins' co-defendants (presumably including Burney) as a result of Morris' testimony. Morris had initially testified that in his neighborhood people who testify are looked on favorably and that people were going to treat him favorably in prison because he testified. When the prosecutor tried to clarify and perhaps cause Morris to realize his mistake, the trial court sustained an "asked and answered" objection. Then, on cross-examination, counsel for Pippins repeated the question, whereupon Morris corrected his prior testimony. Then, on recross, counsel for Pippins persisted and eventually elicited not only that Morris feared being mistreated as a snitch but that he actually feared retaliation from the specific defendants on trial. While we agree that Pippins' counsel likely should not have asked these questions, the content of the testimony—whether Morris was facing consequences as a result of his decision to testify—was admissible and could have been admitted even in a trial of Burney alone. That is, Morris would certainly have testified, even in a case against Burney alone, that he had been facing literally hundreds of years in prison and had bargained that down to 12 years with the possibility of being out in seven and one-half years in exchange for testifying against

Burney and others. Such testimony is directly relevant to Morris' potential motive to lie or falsely incriminate others. Any testimony on that motivation would put the other potential motivations and consequences of testifying at issue, including the fact that Morris feared retaliation from Burney.

{¶ 63} Third, Burney argues that he suffered prejudice from the introduction of a jail telephone call in which Pippins discussed retaliation against Morris. However, the trial court gave a jury instruction to the effect that nothing in any jail calls was to be considered as evidence against anyone other than the participant in the call. Nothing in the call suggested Burney was in any way planning vengeance against Morris. In the call, although Pippins and an unidentified speaker discussed the possibility of someone else called "Moo-moo" beating up Morris, the unidentified speaker actually argued against Pippins attacking Morris, and Pippins agreed that he would not. In short, while we agree that such evidence would not have been introduced in a trial of Burney alone, we do not find that it was prejudicial to him. Having found no prejudice to Burney as a result of the joinder, we overrule Burney's second assignment of error.

{¶ 64} Burney argues in his third assignment of error that the trial court violated his right to confront a witness when it admitted testimony regarding something a non-testifying co-defendant had said. "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." Sixth Amendment to the United States Constitution. This has been interpreted to mean that testimonial statements cannot be admitted into evidence without the opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 61, 68-69 (2004).

{¶ 65} Burney argues that the trial court erred when it permitted Morris to testify that Pippins told him Burney was going to dispose of a firearm that Pippins had used in a shooting. Such statements between drug dealing allies about the nature of their plans were likely not testimonial. *See Crawford* at 52 (noting that one way to define testimonial statements is "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial"). It is doubtful, after all, that Pippins ever foresaw his statement to Morris being used at any later trial. However, even if we assume, arguendo, that Pippins' statement to Morris about what Burney was going to do was testimonial, any error is harmless beyond a

reasonable doubt. That is, the statement tends to show that Burney tampered with evidence, but the tampering charge was dismissed as to Burney on a Crim.R. 29 motion at the close of the state's case. For these reasons, we overrule Burney's third assignment of error.

{¶ 66} Burney argues in his fourth assignment of error that the trial court erred when it failed to grant a mistrial based on prosecutorial misconduct. He contends that certain statements made by the prosecutor during closing about the deadly effects of drugs were misconduct and that a mistrial should have been granted. " 'The test for prosecutorial misconduct during closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected the accused's substantial rights.' " *State v. Cepec*, 149 Ohio St.3d 438, 2016-Ohio-8076, ¶ 96, quoting *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, ¶ 198; *see also State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, ¶ 162, quoting *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, ¶ 121.

{¶ 67} During opening statements in this case, the prosecution made comments about one defendant supporting her lifestyle through involvement with one of the other defendants and his drug dealing. The defense replied during closing that the prosecution had failed to establish any lavish lifestyle enjoyed by any defendants as a way to suggest that they were not guilty of the extensive drug trafficking with which they had been charged. Then, on rebuttal the prosecutor made the following remarks:

> I would suggest to you that any lifestyle built - - predicated solely on the misery and death of other people is the wrong kind of lifestyle. That's what heroin is. Any lifestyle she's living - - and the call that I'm going to talk about, I think, expressly tells you why I'm saying this. Any lifestyle she or he are living based on other people's misery is illegal.
>
> The point of selling drugs is to make money. The effect of selling drugs is killing people.

(Tr. at 4084-85.)

{¶ 68} The prosecution had introduced no testimony regarding the health effects of heroin or drug dealing. It also had not introduced evidence to tie any drugs sold by any defendant to any overdose or other drug-related death. Thus, the prosecutor's argument assumed facts not in evidence and was, in that sense, arguably improper and somewhat

inflammatory. Yet, we do not find it necessary to further address that point because we do not find prejudice to Burney's substantial rights. This was a single remark which was uttered one time in nearly 70 pages of closing argument by the state in the larger context of a four-week trial comprising a transcript of several thousand pages. Moreover, the content of the remark likely did not inject into the minds of the jurors any ideas with which they were not already acquainted concerning the illegal drug, heroin. Therefore, we overrule Burney's fourth assignment of error.

{¶ 69} Accordingly, we overrule Burney's five assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER, P.J., concurs.
BRUNNER, J., concurs in part and dissents in part.

BRUNNER, J., concurring in part and dissenting in part.

{¶ 70} Despite the trial court not having fully resolved the uncertainty expressed by Juror No. 7 about her verdicts on Counts 1, 19, and 21, the majority holds that it was not plain error to convict and sentence Burney on those counts, overruling Burney's fifth assignment of error. I would instead sustain that assignment of error to the extent the majority overrules it as to Counts 1, 19, and 21. In vacating Burney's conviction on Count 1, I would not address Burney's first assignment of error in which he argues that Count 1 should have been dismissed. I would instead find that assignment of error to be moot. To that extent, I respectfully dissent from the majority opinion. Otherwise, I concur with the majority's other holdings in this case. I also concur with the majority's statements of law concerning the standard for finding plain error and the trial court's duty to resolve uncertainty when polling the jury.

{¶ 71} As I agree with the majority's articulation of the law in this area, I will only briefly repeat the principles involved. "Crim.R. 31(D) grants the trial judge or any party the absolute right to have the jury polled after it has returned its verdicts." *State v. Sneed*, 63 Ohio St.3d 3, 14, fn. 5 (1992). "If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberation or may be discharged." Crim.R. 31(D). Thus, in the event of non-unanimity, a trial court has discretion whether to direct the jury

"to retire for further deliberation" or to "discharge[]" the jury. *Id.* It cannot be overemphasized that a trial court does not have discretion to accept a non-unanimous verdict in a criminal case.

{¶ **72**} Crim.R. 31(A) explicitly requires that a "verdict shall be unanimous." The Ohio Constitution requires that "[t]he right of trial by jury shall be inviolate, except that, in civil cases, laws may be passed to authorize the rendering of a verdict by the concurrence of not less than three-fourths of the jury."[1] Ohio Constitution, Article I, Section 5. The Supreme Court of Ohio has confirmed that Article I, Section 5 of the Ohio Constitution requires juror unanimity in criminal cases.

> [O]ur opinion is, that the essential and distinguishing features of the trial by jury as known at the common law, and generally, if not universally, adopted in this country, were intended to be preserved, and its benefits secured to the accused in all criminal cases, by the constitutional provisions referred to [Ohio Const. Art. 1, Sec. 5]. That it is beyond the power of the General Assembly to impair the right, or materially change its character; that the number of jurors cannot be diminished, or a verdict authorized short of a unanimous concurrence of all the jurors.

*Work v. State*, 2 Ohio St. 296, 306 (1853) (overruled as to the holding regarding the absolute immutability of the number of jurors in misdemeanor cases in *State ex rel. Columbus v. Boyland*, 58 Ohio St.2d 490 (1979), syllabus); *see also State v. Robbins*, 176 Ohio St. 362, 364 (1964); *McHugh v. State*, 42 Ohio St. 154, 156 (1884); *see also Richardson v. United States*, 526 U.S. 813, 820 (1999) (remarking that "this Court has indicated that the [federal] Constitution itself limits a State's power to define crimes in ways that would permit juries to convict while disagreeing about means, at least where that definition risks serious unfairness and lacks support in history or tradition"); *but cf. State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, ¶ 35 (plurality decision remarking that Ohio only imposes a unanimity requirement by rule).

{¶ **73**} Because unanimity is required explicitly by rule and implicitly by the Constitution, when there is " '[i]n any case * * * the appearance of any uncertainty or

---

[1] Though the exception permitting a three-fourths verdict for civil trials was added in 1912, the Constitution has never been amended to include an exception to the implied unanimity requirement for criminal cases.

contingency in a jury's verdict, it is the duty of the trial judge to resolve that doubt, for "there is no verdict as long as there is any uncertainty or contingency to the finality of the jury's determination." ' " *Sneed* at 14, quoting *United States v. Morris*, 612 F.2d 483, 489 (10th Cir.1979), quoting *Cook v. United States*, 379 F.2d 966, 970 (5th Cir.1967). Thus, " 'a jury has not reached a valid verdict until deliberations are over, the result is announced in open court, and no dissent by a juror is registered.' " *Sneed* at 14, fn. 5, quoting *United States v. Taylor*, 507 F.2d 166, 168 (5th Cir.1975). And once a jury has been discharged, the verdict cannot be altered. *Sargent v. State*, 11 OHIO 472, 473 (1842).

{¶ 74} The law requires that a jury must be polled if the defendant requests it and there is no verdict until it is "announced in open court" without "any uncertainty or contingency." *Sneed* at 14, fn. 5. A conviction may not stand based on a "verdict" that is accepted without being unanimous and announced in open court, because a defendant has a "substantial right to a unanimous jury verdict." *State v. Rawson*, 10th Dist. No. 14AP-1023, 2016-Ohio-1403, ¶ 23-24. Consequently, an unanimity error is a "defect[] affecting substantial rights." Crim. R. 52(B). In other words, an unanimity error always affects the outcome and is plain. *Id.*; *Rawson* at ¶ 23-24; *United States v. Ullah*, 976 F.2d 509, 514 (9th Cir.1992).

{¶ 75} In this case, the jury initially announced verdicts finding Burney guilty of Count 1 (pattern of corrupt activity), Counts 8, 16, 19, 21, and 30 (heroin trafficking), Count 31 (manufacture of drugs), and Counts 38 and 39 (heroin and cocaine possession, respectively). (Feb. 4, 2015 Verdict Forms, filed Feb. 10, 2015; Tr. at 4320-28.) Then the defendants, including Burney, requested that the jury be polled. (Tr. at 4349.)

{¶ 76} As to Count 1 (pattern of corrupt activity), the trial court did not poll Juror No. 7 as requested by the parties and instead started at Count 2:

> THE COURT: Okay. You're Juror Number 7.
>
> Okay. Now, with regard to the verdicts involving Keith Pippins, are these your verdicts?
>
> JUROR 7: Yes.
>
> THE COURT: Freely, voluntarily, and independently found and entered by you?

Nos. 15AP-197, 15AP-198 and 15AP-199

JUROR 7: Can I ask you a question, or can I say anything?

THE COURT: Yes. I'll tell you what. Why don't you write it down? Can you do that?

Let me just give you a piece of paper and a pen.

THE COURT: Thank you.

Okay. Okay. What I'm going to do then is I'm going to go through these individually with you. Okay?

All right. And let's see here. Okay. Count 1, I'm going to go -- these are all with regard to Mr. Pippins. Okay. What?

Tell you what. Do you want to approach?

JUROR 7: Yes.

THE COURT: Okay. Come on and do that.

Noise, again, please. Then we will need counsel up here as well.

[PIPPINS' COUNSEL]: Do you want the attorneys?

THE COURT: Yes. Noise, please.

- - -

Thereupon, the following discussion was held at the bench with the court and counsel outside the hearing of the jury:

THE COURT: Okay. Now, let me just get your note here. Okay. It says here some of the charges I wasn't quite clear about. Hence the reason for my further note.

Okay. So that's why I wanted to go over each one of these with you. And , basically, I'll hand them to you. Okay? And then - -

JUROR 7: You know that packet that you gave us? If I could look at that.

THE COURT: Yes. Go get it.

JUROR 7: Thank you.

THE COURT: I think that was the one that said do we have to - - is it an all or nothing type of thing.

Come on up here, please. Thank you.

Now, how do you want to go through this? You got them all?

JUROR 7: Yeah.

THE COURT: Very good.

JUROR 7: I have detailed notes.

THE COURT: Let's go back to Count 1 then, and that starts right here. Showing us your notes, and we'll start out with Count 2, Keith Pippins, these are your notes, right?

JUROR 7: Yes.

THE COURT: What you've got here is Count 2, Count 2, guilty. And checkmark, that means you agree with that?

JUROR 7: I had questions. I had some questions.

THE COURT: With Count 2 you had a question, you say?

JUROR 7: Um-hmm.

(Tr. at 4359-61).  The trial court never returned to Count 1 after becoming distracted by the juror's notes and therefore never received an affirmation from Juror No. 7 that Count 1 was her free, voluntary, and independent verdict.  Thus, as to that count, the poll and, hence, verdict were incomplete and were still incomplete when the jury was discharged.  Thus, Burney's conviction on Count 1 is based on an incomplete verdict, constitutes plain error, and cannot stand.  *Sneed* at 14.

{¶ 77} The majority quotes this same section of transcript but then notes that the trial court later indicated its belief that Juror No. 7 had " 'nothing with regard to Count 1.' " *See supra* at ¶ 34, quoting Tr. at 4388.  The majority also observes that the trial court's entry from February 10, 2015, states that Juror No. 7's notes (which were never introduced or read into the record) "indicate[d] that there was no problem with the first count." (Feb. 10, 2015 Decision & Entry at 2.) S*ee supra* at ¶ 36.  The majority accepts these statements by the judge as authoritative indications that Juror No. 7 had no problem with Count 1 and seems to be taking the position that as long as no problems were indicated with a count, we should assume the juror would have adopted the verdict as her own during the

Nos. 15AP-197, 15AP-198 and 15AP-199

poll. *See supra* at ¶ 33-38. The transcript demonstrates that the purported "indication" was, rather, an abdication by the trial court of its duties to ensure "inviolate" the right of defendant to a trial by a jury of his peers, as guaranteed by and intrinsic to the rule of law. Ohio Constitution, Article I, Section 5.

{¶ 78} With all due respect to the views of the majority and efforts made by the trial court, I believe that when there is "in any case * * * the appearance of any uncertainty or contingency in a jury's verdict, it is the duty of the trial judge to resolve that doubt, for there is no verdict as long as there is any uncertainty or contingency to the finality of the jury's determination. " (Internal quotation marks omitted.) *Sneed* at 14. Here, this juror registered what is fairly characterized as a general uncertainty about her verdicts. With respect to Counts 15, 16, 20, 21, 30, and 33, Juror No. 7 indicated she felt pressured and with respect to one, Count 33, she recounted that there was "a big fight about this" that left her "so upset" and "crying." (Tr. at 4365-67, 4369-74.) She indicated she had "[r]eal issues" with Counts 25, 26, and 27. (Tr. at 4371.) She also indicated some uncertainty (or at least initial uncertainty) with respect to Counts 2, 4, 6, 17, 19, 21, 29, 30, 32, and 34. (Tr. at 4362-64, 4367-76.) She expressed confusion with respect to how she voted on a number of counts. She indicated she voted "not guilty" on Count 10 when the verdict forms reflect a guilty finding and that she voted "guilty" on Count 11 when the verdict forms reflect a not guilty finding. *Compare* Tr. at 4364-65 *with* Feb. 10, 2015 Verdict Forms. Juror No. 7 expressed two different beliefs as to her vote on Count 19 with respect to Burney before indicating she was uncertain. (Tr. at 4368-69.) The juror indicated that she would never have voted guilty on Count 33, notwithstanding the guilty verdict executed by the jury. (Tr. at 4374.) She also expressed that she was confused and that "all the charges [were] running together." (Tr. at 4375.) In short, she demonstrated a high level of confusion and never conveyed an indication of any type that, unless she expressed a problem with a count, the court should assume the jury's verdict was her verdict. In fact, her discussion with the trial judge concluded as follows:

> THE COURT: Okay. All right. Very good. As long as you're up here then, for those things that you said yes, those are your verdicts, those are freely, voluntarily entered by you, and the other ones you just felt you were pressured? Is that a fair statement?

> JUROR 7: Yes.
>
> THE COURT: Those are your verdicts, and the other ones you're not sure?
>
> JUROR 7: Yes.

(Tr. at 4377-78.)

{¶ 79} To summarize, the transcript indicates this juror was not polled in open court as to whether Count 1 was her free and voluntary verdict. Thus, Count 1 is, by her own statements, among "the other ones" for which she was "not sure." (Tr. at 4377-78.) Given the high level of confusion the juror otherwise indicated, and regardless of the trial judge's after-the-fact statements, we fail in our duty to the rule of law if we make assumptions about how the juror might have responded had she been polled in open court on Count 1. Because we cannot make an assumption about how she would have responded, the transcript indicates that the verdict on Count 1 is uncertain; thus, I would vacate the trial court's conviction on this count. On that basis I would also find the first assignment of error to be moot. As the majority does not, I dissent.

{¶ 80} Despite the fact that the verdict form indicated "guilty," Juror No. 7 initially agreed that she voted "not guilty" on Count 19.

> THE COURT: Until you have questions, everything else is fine.
>
> Count 19, you're okay with that? That has all three defendants in it.
>
> JUROR 7: Um-hmm.
>
> THE COURT: And you had a not guilty on Burney and not guilty on [the second co-defendant], I believe.
>
> JUROR 7: Um-hmm.

(Tr. at 4367-68; *see also* Tr. at 4323 (reporting a verdict of "guilty" on Count 19 as to Burney); Feb. 10, 2015 Verdict Forms (reporting a verdict of "guilty" on Count 19 as to Burney).) A short time later, she appeared to agree that Burney was guilty of some part of Count 19 and then ultimately indicated she was not sure of her verdict:

> THE COURT: Okay. And then with Mr. Pippins, I believe.

JUROR 7: Two charges.

THE COURT: Okay.

JUROR 7: Not guilty on gun. Guilty on transport, ship. Was he tried with transporting and shipping too?

THE COURT: I can't answer that. Okay? Not guilty on gun but guilty on transport with regard to Burney. Is that, in fact, your verdict?

JUROR 7: Yes.

THE COURT: [The second co-defendant], I believe, was not guilty.

JUROR 7: Not guilty.

THE COURT: That leaves Pippins. You have a note there that I can't –

JUROR 7: Two charges. I was wanting clarification. Was he being charged with trafficking in heroin and --

THE COURT: It's trafficking with ship and transport.

JUROR 7: Yes.

THE COURT: Is that your verdict there, or you're not sure?

JUROR 7: I don't have anything up there.

THE COURT: Okay.

JUROR 7: Because I wasn't sure what that charge actually was, was it for the trafficking in heroin and shipping and transport.

THE COURT: You're not sure of that particular charge?

JUROR 7: Um-hmm.

THE COURT: Let me highlight that one as well. Thank you.

(Tr. at 4368-69.)

{¶ 81} Although the verdict form indicated Burney was "guilty" of Count 19, Juror No. 7 indicated variously that she voted "guilty," "not guilty," and was "not sure of that

particular charge," as to Count 19.  (Tr. at 4367-69; *see also* Tr. at 4323 (reporting a verdict of "guilty" on Count 19 as to Burney); Feb. 10, 2015 Verdict Forms (reporting a verdict of "guilty" on Count 19 as to Burney).)  In other words, the jury poll revealed the "appearance of [] uncertainty or contingency in [the] jury's verdict." *Sneed* at 14.  The trial court stated in its entry that the juror "made it clear that her verdict, as to Percy Burney, was guilty, but not guilty on the firearm specification, which was the jury's overall verdict."  (Feb. 10, 2015 Decision & Entry at 2.)  But this recitation does not accurately reflect what is in the duly transcribed record and it is axiomatic that this Court decides cases based on what actually exists in the record as it is preserved for appeal. *Morgan v. Eads*, 104 Ohio St.3d 142, 2004-Ohio-6110, ¶ 13 ("[A] bedrock principle of appellate practice in Ohio is that an appeals court is limited to the record of the proceedings at trial.").  The trial court did not, during the colloquy with Juror No. 7, insist on a more intelligible oral response or even describe for the record body language of the juror that might have permitted it to disagree with what the juror orally indicated.  Absent those measures that could have supported the trial court's ruling, the transcript speaks for itself.  I would find that the trial court did not complete its "duty" to "resolve" the "appearance of any uncertainty or contingency in [the] jury's verdict" and, thus, there "is no verdict" as to this count. *Sneed* at 14.  Convicting Burney despite uncertainty as to the jury's verdict on this count was obvious error that affected the outcome—thus it was plain.

{¶ 82}  The juror seemed at first to offer an assenting noise of some type when asked if she believed Burney was guilty of Count 21.  But then stated that she was pressured into it.

> THE COURT: With regard to Count 21, you believe that Mr. Burney is guilty. Is that your verdict?
>
> JUROR 7: Um-hmm.
>
> THE COURT: With Pippins you're not sure?
>
> JUROR 7: I was pressured into it.
>
> [PIPPINS' COUNSEL]: She was pressured into it.
>
> JUROR 7: I'm sorry.

> THE COURT: Don't worry about that.

> JUROR 7: Okay. I understand.

(Tr. at 4370.) The trial court construed the juror's statements here as indicating uncertainty as to Keith Pippins only. (Feb. 10, 2015 Decision & Entry at 3.) But it was the court, not the juror, who limited her statement "I was pressured into it," to Pippins and the juror never agreed with that limitation. (Tr. at 4370.) Thus, for this count also, I would find that the trial court failed in its "duty" to "resolve" the "appearance of any uncertainty or contingency in [the] jury's verdict" and, thus, there "is no verdict" as to this count. *Sneed* at 14. Without a unanimous verdict, the conviction on Count 21 cannot stand. As with the other counts, convicting Burney despite an uncertain verdict is an obvious error that affected the outcome; thus, the error is plain.

{¶ 83} "The right of trial by jury shall be inviolate." Ohio Constitution, Article I, Section 5. It is therefore beyond the power of the legislature, the executive, the courts, or any power, save only the people themselves by amendment to the Constitution, to abridge the right for the verdict a jury in a criminal case to be unanimous before a conviction may be obtained. *Robbins*, 176 Ohio St. at 364; *McHugh*, 42 Ohio St. at 156; *Work*, 2 Ohio St. at 306; *see also Richardson*, 526 U.S. at 820. In Burney's case, the after-the-fact narrations by the trial court of what does not exist in the record (gestures, unless verbally narrated or described by the one expressing or observing them, such that words are also used to convey what these gestures are or purport to be) cannot exist in a transcript. Nor can notes that are never read or introduced into evidence be part of a transcript. And nor can constructions of the juror's beliefs that seem to contradict what she actually said support with any reliability that Juror No. 7 agreed with her fellow jurors as to Counts 1, 19, and 21. Convicting Burney on those counts constituted plain error and I dissent accordingly. I would sustain in part and overrule in part Burney's fifth assignment of error. I dissent also on the first assignment of error; I would find that to be moot. Otherwise, I concur in other holdings expressed in the opinion not addressed by this dissent.

_____